IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ZENERGY BRANDS, INC., *et al.*,[1] | § | Case No. 19-42886 |
| | § | |
| Debtors. | § | (Joint Administration Requested) |

**DECLARATION OF JOSHUA CAMPBELL IN SUPPORT
OF CRITICAL VENDOR MOTION AND SUPPLEMENTAL DECLARATION IN
SUPPORT OF A CERTAIN FIRST-DAY MOTION**

I, Joshua Campbell, do hereby declare, under penalty of perjury, that:

1. I am the President and Director ("President") of Zenergy Brands, Inc. ("Zenergy Brands" and together with NAUP Brokerage, LLC, Zenergy Labs, LLC, Zenergy Power & Gas, Inc., and Enertrade Electric, LLC, Zenergy & Associates, Inc., and Zen Technologies, Inc. collectively, the "Company" or "Debtors"). I have served in that role since October 19, 2019. I have been employed by Zenergy Brands since 2017. Since that time, I have held various titles and assumed many responsibilities, including handling or overseeing financial modeling, liquidity management and general day-to-day operations. As a result, I am generally familiar with the Debtors' day-to-day operations, businesses, financial affairs, books and records, and restructuring efforts. I am above 18 years of age and, in my opinion, competent to testify. I am authorized to submit this Declaration on the Debtors' behalf.

---

[1] The Debtors in the above-captioned chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Zenergy Brands, Inc. (1686); NAUP Brokerage, LLC (7899); Zenergy Labs, LLC (8045); Zenergy Power & Gas, Inc. (1963); Enertrade Electric, LLC (8649); Zenergy & Associates, Inc. (4022); and Zen Technologies, Inc. (7309). The above-captioned Debtors' mailing address is 5700 Granite Pkwy, #200, Plano, TX 75024.

1

2.     Prior to my time at Zenergy Brands, I spent over fifteen years in the technology and service-delivery sector. I was the Director of Network Services of Stream Energy. In this position, I oversaw network services related to the sale of energy services. I also provided consulting services relating to operations and technology. I have also served as the Director of Operations for US First Energy and as the Senior IT Manager for USA Environment. As the Senior IT Manager, I oversaw the IT budget for a multistate company and assisted the executive team on its day-to-day responsibilities.

3.     I submit this Declaration to provide support for the Debtors' *Emergency Motion for Interim and Final Orders Authorizing Debtors to Pay or Honor Prepetition Obligations to Certain Critical Vendor* (the "Critical Vendor Motion") and as further support for the *Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Pay Prepetition (A) Contractor Fees, Salaries, Other Compensation, and Reimbursable Expenses, (B) Continue Prepaid Card Program, and (II) Granted Related Relief* (the "Contractor Motion"). Except as otherwise indicated herein, all facts set forth in this Declaration are based on my personal knowledge of the Company's operations and finances, information learned from my review of relevant documents, information supplied to me by other employees of the Company and the Company's advisors, or my opinion based on my experience concerning the Company's operations and financial condition. I am authorized to submit this declaration on behalf of the Debtors, and, if called to testify, I could and would testify competently to the facts set forth herein.

**I.     The Debtors' Businesses**

4.     The Debtors are a next-generation energy and technology company engaged in the business of selling energy-conservation products and services to commercial, industrial, and municipal customers. Zenergy Brands, Inc. ("Zenergy Brands") is a business-to-business

company, whose business platform is a combined offering of energy services and smart controls. Zenergy Brands offers a unique value proposition to commercial, industrial, and municipal customers whereby it offers a means to reduce their utility expenses anywhere from 20% up to 60% through energy-efficient and smart-control products and service.

5.     The foundation of the Debtors' business is its "Zero-Cost Program." This is a turnkey solution that enables its target customers to upgrade their older, inefficient equipment and assets, allowing for installation of energy-efficient retrofits such as HVAC and refrigeration motor controllers, load-factor improvement technologies, building-envelope-based technologies, weatherization-based technologies, smart controls, and LED lighting, all at no up-front cost to its customers.

## II.     The Zero-Cost Program and Relationship with the Critical Vendor

6.     The Zero-Cost Program is facilitated through an industry-standard agreement referred to as a Managed Energy Services Agreement ("MESA"). Under a MESA, Zenergy is obligated to develop, arrange financing for, install, and maintain all energy-efficiency measures and equipment installed by Zenergy Brands. Zenergy Brands will retain ownership of all installed equipment. The minimum term of the MESA is five years with an expected average of seven years. Under the terms of the MESA, Zenergy Brands' customers are obligated to pay Zenergy Brands a portion of their savings in utility costs following the installation of Zenergy Brand's equipment; these are referred to as "Service Payments."  The Debtors rely on certain vendors to provide equipment, installation, and servicing for their customers.

7.     I have specifically identified Unify Energy Solutions as a critical vendor (the "Critical Vendor") that is essential to maintain their operations and which provide essential services for a key MESA.  Specifically, a school district (the "Client") is an important customer

3

of the Debtors and desires to use a building-automation system known as "Reliable Controls." I have identified the Critical Vendor as critical because it is the exclusive distributor and installer of Reliable Controls and has already begun installing Reliable Controls for the Client (the "Project") in relation to an existing MESA and is over halfway through completion of the Project. I understand and believe that the Debtors owe approximately $457,560 to the Critical Vendor for work and services already performed on the Project and will owe approximately $481,377 for work and services to be performed on the Project after the Petition Date.

### III. The Critical Vendor Motion - Failure to Continue Relationship with the Critical Vendor will Cause Debtors Irreparable Harm

8. Without the continued services and equipment of the Critical Vendor, the Debtors will be unable to complete the Project using the Reliable Controls. Without the Reliable Controls system, the Debtors would be required to remove the system, purchase a new system, and install a different building automation system – or "BAS." Given the cost-benefit analysis, the Debtors do not believe that removal of the Reliable Controls system makes business sense. The Debtors believe that it makes more business sense to complete the installation – and pay the required pre-petition balance – than to remove Reliable Controls – assuming the Client would even authorize the Debtors to remove it – and install a different "BAS." Stated simply, it is cheaper to pay the balance due than to pay for the de-installation costs for the Reliable Control system, the purchase price of the new system, and the installation costs for the new system.

9. The Critical Vendor is not under a contractual obligation to complete the Project. The Critical Vendor declined the Debtors' request that it accept payment of the pre-petition amounts over some period of time. The Critical Vendor further stated that it would not resume work on the Project until it had been paid in full, including the pre-petition amounts it is owed.

10. The Debtors are concerned that, if the Critical Vendor does not resume work now, the entire value of the Client's contract will be lost. The Debtors do not receive the value of that contract until the installation is complete and the Client's receives energy savings. When that happens, the revenue generated from the Project will become the Debtors' largest piece of recurring revenue.

11. Moreover, the Debtors are concerned about the negative impact or blowback that it would receive if the Critical Vendor were not paid and the Project were not completed. School districts are important clients for the Debtors. School districts also represent over 90% of the Critical Vendor's work. If the Debtors do not pay the Critical Vendor, then the Debtors are concerned that their reputational goodwill – especially in the school-district space – will be irreparably harmed. This harm could be immediate, because the Debtors have two school-district projects that are expected to start in the next 60 days or earlier.

12. Accordingly, I believe that failure to complete the Project through the continued services and equipment of the Critical Vendor would cause irreparable damage to the Debtors business.

**IV. SUPPLEMENTAL DECLARATION IN SUPPORT OF CONTRACTOR MOTION**

13. As stated in my earlier declaration, the Debtors exclusively use independent contractors to perform revenue-generating and administrative services. These contractors perform a wide variety of functions critical to the Debtors' operations and the administration of the Chapter 11 Cases.

14. These Contractors are familiar with the Debtors' businesses and operations. They are necessary for the uninterrupted services of the Debtors to their customers/clients. This uninterrupted service is vital to the success of these Chapter 11 Cases. Therefore, the Contractors

are critically necessary to the Debtors. Unless the Debtors pay the Contractors as outlined in the Contractor Motion, I expect to the Contractors to discontinue work for the Debtors. Without this work, the Debtors will likely suffer immediate and irreparable harm and lose any economic advantage for the estates and its going-concern value around which a potential restructuring will be discussed and based. This harm is disproportionate to the amount owed and sought to be paid to the Contractors. I have been unable to find a practical alternative to the proposed payment to the Contractors. I do not believe that the Contractors will accept a deposit or other assurances from the Debtors or Court as enticement to continue work. Simply put, I believe that the Contractors need and want the payments outlined in the Contractor Motion to continue their work with the Debtors. That work is necessary to expeditiously and cost-effectively restructure the Debtors and exit bankruptcy.

I.  **CONCLUSION**

15. For the reasons stated herein, in the Critical Vendor Motion filed concurrently herewith, and the Contractor Motion, I respectfully request that the Critical Vendor Motion and the Contractor Motion be granted in its entirety, together with such other and further relief as this Court deems just and proper.

[*Signature Page Follows*]

I certify under penalty of perjury that, based upon my knowledge, information and belief as set forth in this Declaration, the foregoing is true and correct.

Dated: October 29, 2019    Respectfully Submitted,

*/s/ Joshua Campbell*
Joshua Campbell
President and Director
Zenergy Brands, Inc.

4849-1996-9707.2