# EXHIBIT "A"

This Exhibit provides a list of documents that you must produce pursuant the Committee's requests under Rule 2004 of the Federal and Local Rules of Bankruptcy Procedure. The Definitions and Instructions below apply to your production of documents. Please review and comply with such Definitions and Instructions when producing documents pursuant to the requests below.

## I.     Definitions

Unless the context otherwise requires, the following terms and rules of construction shall apply throughout this Exhibit, regardless of whether such terms are used in capitalized or lower-case form, and regardless of whether used in the singular or the plural. Undefined words used herein, to the extent applicable, shall have the meaning ascribed to them by 11 U.S.C. § 101.

1. **"Affiliate**," when used with respect to a Person or entity, means a, parent, subsidiary, designee, assignee, predecessor or successor.

2. **"And"** and **"or"** shall be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive.

3. The words **"any"** or **"all"** shall be construed to mean any and all.

4. **"Bankruptcy Case"** means the bankruptcy case styled *In re Zenergy Brands, et al.*, Case No. 19-42886, in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division, being the lead case under which the Debtors' Chapter 11 bankruptcy cases are jointly administered.

5. **"Campbell Declaration"** means that certain *Declaration of Joshua Campbell In Support of Chapter 11 Petitions and First-Day Motions*, dated October 24, 2019 [Dkt. No. 10].

6. **"Communication(s)"** means any contact or act by which any information or knowledge is transmitted or conveyed between two or more persons and shall include, without limitation, written contact by such means as letters, memoranda, correspondence, electronic mail, telegrams, telex, facsimile, recorded telephone conversations or by any document, and oral contact by such means as face-to-face meetings and telephone conversations.

7. **"Debtors"** refers, collectively, to Zenergy Brands, Inc., Enertrade Electric, LLC, NAUP Brokerage, LLC, Zen Technologies, Inc., Zenergy & Associates, Inc, Zenergy Labs, LLC, and Zenergy Power & Gas, Inc., including any Affiliate(s) or Representative(s) thereof. The term Debtors is used conjunctively and disconjunctively. As a result, a request to produce communications between a Person and Debtors would require the production of all communications between that Person and any and all of the Debtors.

8. **"DIP Facility"** means the proposed Postpetition TCA Indebtedness described in the DIP Motion.

9. **"DIP Motion"** refers to the Debtors' *Emergency Motion For Entry Of Interim And Final Orders (I) Authorizing The Debtors To Obtain Post-Petition Financing, Granting Senior Postpetition Security*

*Interests And According Superpriority Administrative Expense Status Pursuant To Sections 364(c) And 364(d) Of The Bankruptcy Code; (II) Authorizing The Use Of Cash Collateral; (III) Granting Adequate Protection; (IV) Modifying The Automatic Stay; And (V) Granting Related Relief* [Dkt. No. 19] filed in the Bankruptcy Case on October 27, 2019.

10. **"Document"** is used in the broadest possible sense and includes, but is not limited to, all original and all non-identical copies of any writing or record of any type or description, including, but not limited to, the following items, and each draft thereof: writings, recordings, notes, photographs, financial statements, agreements, contracts, legal documents, communications, e-mails, correspondence, letters, statements, reports, envelopes, phone messages, telephone logs, agendas, books, articles, receipts, purchase orders, sales orders, tape recordings, affidavits, opinions, notices, proposals, invoices, confirmations, telegrams, cables, memoranda, records, summaries of records, summaries of data, summaries of personal conversations or interviews, diaries, appointment books, appointment logs, desk calendars, pocket calendars, forecasts, statistical statements, accounts, work papers and related supporting documents, graphs, charts, maps, diagrams, blue prints, tables, indexes, pictures, tapes, microfilms, charges, analytical records, minutes or records of meetings or conferences, reports and/or summaries of interviews, reports and/or summaries of investigations, opinions or reports of consultants, appraisals, records, reports or summaries of negotiations, brochures, pamphlets, circulars, trade letters, press releases, stenographic, handwritten or any other notes, projections, bank statements, checks (front and back), check stubs or receipts, checkbooks, canceled checks, invoice vouchers, electronically or magnetically recorded or stored data, data tapes and sheets or data processing cards or discs or any other computer-related data compilation, and any other written, recorded, printed, typed, photographed, transcribed, punched, taped, filmed, or electronically or graphically recorded documents or writings of whatever description however produced or reproduced, including but not limited to, any information contained in any computer although not yet printed, within your possession, custody or control or in the possession, custody or control of any agent, employee (including without limitation, attorneys, accountants and investment bankers or advisors), or other person acting on your behalf.

11. **"Draft"** shall include but not be limited to any preliminary form of, or any copy bearing notations, marks, or matter not found on the original of, any Document.

12. The use of the word **"including"** shall be construed to mean **"without limitation."**

13. **"Loan Documents"** means any documents, agreements, or contract of any nature related to the TCA Indebtedness.

14. An **"Original"** of a writing or recording is the writing or recording itself or any counterpart thereof intended to have the same effect by a person executing or issuing it. An "original" of a photograph includes the negative and/or any print made therefrom. If data is stored in a computer or similar device, any printout or other output readable by sight, shown to reflect the data accurately and in its native file format, is an "original."

15. **"Person"** means any individual, firm, partnership, joint venture, corporation, d/b/a ("doing business as"), association, company, estate, trust, or other legal, government, or business entity.

16. **"Petition Date"** means October 24, 2019.

17. **"Possession, custody or control"** includes constructive possession, whereby the party to whom this request is directed has the right to compel the production of a matter or documents from a third party (including an agency, authority or representative).

18. **"Preliminary Document Request"** means the document attached hereto as **Exhibit "A-1"**.

19. **"Proposed Buyout(s)"** refers to any attempts, offers, discussions, or any other form of Communication pertaining to the purchase, satisfaction, or refinancing of any debt owed by any Debtor to TCA.

20. The words **"relate to"** a given subject means relating to, concerning, referring to, alluding to, responding to, connected with, commenting on, in respect of, about, regarding, discussing, showing, describing, mentioning, reflecting, analyzing, constituting, evidencing, supporting, or in any way pertinent to that certain subject.

21. **"Relevant Time Period"** means June 1, 2018, through the current date, unless otherwise stated.

22. **"Representative,"** when used with respect to a Person or entity, means, without limitation, any insider, officer, director, employee, attorney, accountant, consultant, advisor, agent, or any other such representative of the Person or entity in question.

23. **"TCA"** means and refers to TCA Global Credit Master Fund, LP and includes, without limitation, TCA Capital International Group, TCA Fund Management Group, and any Affiliate(s) or Representative(s) thereof.

24. **"TCA Indebtedness"** means any and all debts owed by one or more of the Debtors to TCA. References to **"Prepetition TCA Indebtedness"** mean any debts incurred prior to the Petition Date. References to **"Postpetition Indebtedness"** mean any debts incurred after the Petition Date, including, without limitation, the DIP Facility.

25. **"Writings"** and **"Recordings"** consist of letters, words, numbers or their equivalent, set down by handwriting, typewriting, printing, photographing, mechanical or electronic recording, or any other form of data production, reproductions or compilations, however stored.

26. Use of the word **"you"** refers to the Debtors.

## II.   Instructions

1. **Production of Documents**. You are required to produce all documents in your possession, custody or control that are requested herein. All documents requested herein may be produced in electronic format unless otherwise instructed.

2. **Lost or Destroyed Documents**. If any documents requested herein have been lost, discarded, or destroyed, the document so lost, discarded, or destroyed should be identified as completely as possible, including without limitation the following information: (a) a description of the document and the contents of the document; and (b) the date of disposal, the manner of

disposal, the reason for disposal, the name of the person authorizing the disposal, and the name of the person disposing of the document.

3. **Lack of Custody**. If any document herein requested is claimed by you not to be in your possession, custody or control, then you are directed to identify (a) the nature of the document, (b) the name, address and telephone number of any person who has or may have possession, custody or control of such demanded item, and (c) whether and how you presently have access to the document and can obtain a duplicate of it.

4. **Selection of Documents**. The selection of documents from files and other sources shall be performed in such a manner as to insure that the file or other source from which a document is obtained may be identified.

5. **Separation of Documents**. Documents attached to other documents or other materials shall not be separated unless sufficient records are kept to permit reconstruction of the grouping.

6. **Electronic Documents**. All documents in electronic format shall be produced in their native file format, unless otherwise instructed by the Committee.

### III.     Requested Documents

1. All Communications, Documents, Drafts of Documents, Writings, and Recordings involving the Debtors pertaining to any Proposed Buyout prior to the Petition Date.

2. All Communications, Documents, Drafts, Writings, and Recordings between the Debtors and Bellridge Capital prior to the Petition Date.

3. All Communications, Documents, Drafts, Writings, and Recordings between the Debtors and RB Capital prior to the Petition Date.

4. All Communications, Documents, Drafts, Writings, and Recordings between the Debtors and TCA prior to the Petition Date.

5. All Communications, Documents, Drafts, Writings, and Recordings between the Debtors and TCA after the Petition Date.

6. All Communications, Documents, Drafts, Writings, and Recordings involving the Debtors and related to efforts by the Debtors to solicit or otherwise obtain post-petition debtor-in-possession financing from any Person other than TCA.

7. All Communications, Documents, Drafts, Writings, and Recordings related to any attempts of the Debtors to raise money for any purpose during the Relevant Time Period, including, attempts to obtain funding from TCA pursuant to the Loan Documents or attempts to raise money, including loans, equity or otherwise, from other sources besides TCA.

8. All Communications, Documents, Drafts, Writings, and Recordings related to the Investment Banking Services Agreement dated August 22, 2018, between Zenergy Brands, Inc. and

TCA, including, the Recording of the conference call between the Debtor(s) and TCA on August 14, 2019.

9. All Communications, Documents, Drafts, Writings, and Recordings related to any potential mergers, acquisitions or sale of the Debtor(s) or any part thereof.

10. All Communications, Documents, Drafts, Writings, and Recordings between Debtors and Alex Rodriguez.

11. All of Debtors' Communications, Documents, Drafts, Writings, and Recordings pertaining to the Debtors' acquisition of Entertrade Electric, LLC.

12. All of Debtors' insurance policies effective during the 12 months prior to the Petition Date and/or currently effective.

13. All of Debtors' internal Communications, Documents, Drafts, Writings, and Recordings related to any of Debtors' causes of action or potential causes of action prepared during the four years prior to the Petition Date.

14. All of Debtors' board minutes, including Drafts, prepared during the four years prior to the Petition Date.

15. All of Debtors' bank records, including check copies and wire and ACH transfer records evidencing distributions, dividends, or other non-salary payments made to Debtors' officers and directors during the four years prior to the Petition Date.

16. All yearly and monthly financial statements.

17. All Communications, Documents, Drafts, Writings and Recordings related to projections, financial models, budgets, analysis, and spreadsheets applicable to the Debtors' revenues, cash, expenses, financial performance and other performance information, expectations or scenarios.

18. Without regard to the Relevant Time Period, all Communications, Documents, Drafts, Writings and Recordings relating to each and all "Unsecured Creditors" as described in paragraphs 24 and/or 30 of the Campbell Declaration, including relating to information provided to such "Unsecured Creditors" as part of the process of obtaining loans or equity investments from such "Unsecured Creditors."

19. All Communications, Documents, Drafts, Writings and Recordings relating to the Debtors' current sales cycles or pipeline, including current contracts, outstanding proposals, potential customers for which analysis is being performed, potential customers for which the Debtors are offering to perform analysis and other customer, potential customer and potential revenue projections therefrom [a spreadsheet summarizing the above would initially be adequate, but the Committee reserves all of its rights to seek the underlying information and expressly does not agree to any such summary being introduced into evidence without producing all underlying documentation and otherwise complying fully with F.R.E. 1006].

20. All Communications, Documents, Drafts, Writings and Recordings related to the "Services Agreement" as defined at paragraph 25 of the Campbell Declaration.

21. All Communications, Documents, Drafts, Writings and Recordings related to the Securities and Exchange Commission, Debtors' publicly listed stock and/or other forms of equity and any other securities, governmental, trading board or other oversight or enforcement agencies or organizations, including the Public Company Accounting Oversight Board.

22. All Communications, Documents, Drafts, Writings and Recordings as set forth in the Preliminary Document Request that have not been previously produced.



**EXHIBIT "A-1"**

JOSEPH M. COLEMAN
Direct (214) 777-4280
Email jcoleman@krcl.com

November 12, 2019

*Via E-Mail – mhelt@gardere.com*
Marcus A. Helt, Esq.
FOLEY & LARDNER LLP
2021 McKinney Avenue, Suite 1600
Dallas, TX 75201

Re: *In re Zenergy Brands, Inc., et al* (the "Debtors"), Case No. 19-42886; In the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division

Dear Mr. Helt:

As you know, Kane Russell Coleman Logan PC represents, pending court approval, the Official Committee of Unsecured Creditors (the "Committee") in the Zenergy Brands, Inc., et al. bankruptcy cases. In order to fulfill our duties to our constituency, we require the documents requested below.

We believe it is important to move quickly in this case and, to that end, require an expedient response from the Debtor to the Committee's requests for documents. Even so, we are cognizant of the Debtor's reduced staff and the other demands on their time associated with the bankruptcy process. As an accommodation, we divided our requests into high priority items and second priority—but important—items. We would appreciate receiving the high priority items as soon as possible. Of course, certain items may become "non-issues" and new matters may arise as the Committee works through its investigation. As we progress, please let us know of any additional matters the Debtor believes may be in the best interests of creditors for the Committee to investigate.

Unless otherwise stated, all documents should be produced from January 1, 2018 through and including the date of production. The term "document" expressly includes, but is not limited to correspondence, communications in any form, memos, analyses, presentations, excel spreadsheets, e-mails, written agreements, etc. All document requests are directed to the Debtor unless otherwise expressly provided.

**HIGH PRIORITY ITEMS:**

1. Any revised, modified or changed Budget from the Budget attached to the DIP Financing Motion [Dkt. No. 19] as Exhibit A.

---

**Dallas**
901 Main Street
Suite 5200
Dallas, Texas 75202
214.777.4200

**Houston**
5051 Westheimer Road
Suite 1000
Houston, Texas 77056
713.425.7400

7319810 v1 (72278.00002.000)

Marcus A. Helt, Esq.
November 12, 2019
Page 2

    2. Any and all loan, collateral, and perfection documents, including, but not limited to, all loan agreements, security agreements, promissory notes, debentures, notices of default, forbearance agreements, inter-creditor agreements, covenant waivers, guaranties, and financing statements applicable to any of the Debtor's allegedly secured and unsecured creditors ("Loan Documents"), including those that evidence any indebtedness owed or agreements with TCA (as defined below), including without limitation the TCA Senior Security Facility Convertible Notes; TCA Investment Banking Services Agreement, TCA Capital International Group, TCA Global and any direct or indirect affiliates of the above (collectively "TCA").[1]

    3. All correspondence, e-mails, other electronic or written communications, memoranda (collectively "communications") from, to, or referencing TCA, including without limitation, notices of default, letters relating to the exercise of remedies, forbearance requests, the attempted workout or restructuring of outstanding loans, communications concerning reserves and eligible or ineligible accounts or inventory, and any requests for certain action or information, or documents evidencing any lender or creditor's efforts to exert control over the Debtor's operations.

    4. All Communications with, from, to or referencing TCA related, directly or indirectly, to (i) Debtor's obtaining additional debt or refinancing, (ii) sale of Debtor's assets outside the ordinary course of business, (iii) investment in the Debtor, (iv) obtaining a payoff of amounts owed to TCA, (v) indebtedness owed or allegedly owed by TCA, (vi) any alleged defaults or breaches of the Debtor's obligations owed to TCA, (vii) officers of the Debtor, (viii) Debtor's business decisions, and (ix) Debtor's refinancing efforts.

    5. Any and all Default Letters, nocies of default or communications from TCA regarding any breach, violation, or failure to comply with any term, provision or obligation owed by the Debtors to TCA.

    6. All documents evidencing TCA's efforts to exert any undue influence, dominion, or control over any operations or material decisions, actions, or omissions of the Debtor.

    7. Any documentation, communication, analysis or reference to attempt to pay off or otherwise satisfy indebtedness owed to TCA, including, without limitation,[2] (i) TCA charging the Debtors any amounts due; (ii) calculation of monthly principal and/or interest due TCA at any time; (iii) amount of interest due and whether default interest is owed; (iv) total indebtedness at any time due TCA; and (v) attempts to pay off TCA.

    8. Any documentation, communication, analysis or reference to efforts by the Debtors at any time after August 2018 to obtain any financing debt, capital, funding, advances or equity from any source, including DIP Financing

    9. Any documentation, communication, analysis or reference to that certain Investment Banking Services Agreement, from TCA Capital, dated August 22, 2019, as referenced in the Declaration of Joshua Campbell in Support of Chapter 11 Petition and First Day Motions [Dkt. No. 10] at pg. 10, ¶24

---

[1] Capitalized terms not otherwise defined herein have the meanings ascribed to them or otherwise referenced in the *Declaration of Joshua Campbell in Support of Chapter 11 Petitions and First-Day Motions* (the "First-Days Declaration [Docket No. 10].
[2] Use of "including" herein is the same as and means "including without limitation" with repeating same each time.

EXHIBIT "A-1"

Marcus A. Helt, Esq.
November 12, 2019
Page 3

    10.    Any documentation, communication, analysis or reference relating to advances or failure to advance funs by TCA, the lockbox or complaints by the Debtor about TCA

    11.    All valuations, analysis, examinations, appraisals, or reports concerning collateral securing any of the Debtor's obligations to any of the parties identified in demand number 1.

    12.    All availability analyses, borrowing base reports, and related information and correspondence applicable to the Debtor's borrowing base or availability of funds from the Secured Parties since the commencement of the Debtor's relationship with TCA.

    13.    The following financial statements for the Debtors:

        a.    Monthly financial statements, including income statements, balance sheets, cash flow statements and other regularly generated monthly financial statements since **August 1, 2018**;

        b.    Audited financial statements for the two years preceding the commencement of the bankruptcy cases; and

        c.    Tax returns for the two years preceding the commencement of the bankruptcy cases; and

        d.    All income, expenses, asset sale or other projections (or other financial modeling) generated since **January 1, 2018**, including without limitation any budgets prepared in connection therewith.

    14.    A detailed list of all of the Debtor's assets and, if not already provided in response to a prior request, a detailed appraisal, report, or valuation of all of the Debtor's assets.

    15.    Access to the Debtor's data room, if any.

**SECOND PRIORITY ITEMS:**

    1.    All documentation evidencing transfers between the Debtor and its affiliates, including an accounting of all receivables and payables outstanding.

    2.    Documentation evidencing any Insider loans, claims, or transfers, including any transfers to affiliate entities outside of the ordinary course of the Debtor's business.

    3.    If not previously provided, please provide all "loan packages", prospectus, or other materials relating to:

        a.    Attempts to retain investment bankers, financial advisors or other parties to aid the Debtor with potential fund raising, financing, capitalization, mergers, acquisitions, cost-cutting or other significant transactions;

        b.    Attempts to obtain an equity infusion, capitalization, debt restructure, debt refinancing or other similar transaction affecting the capital structure, balance sheet, liquidity, solvency or the equity of the Debtor; and

        c.    Efforts to obtain new or additional loans.

Marcus A. Helt, Esq.
November 12, 2019
Page 4

    4.    Documentation detailing the Debtor's equity structure, and ownership interests in any other business entities and affiliates

    5.    Documentation evidencing all claims and causes of action the Debtor has or may have against any party, including any Insider, former Insider, lender, or any other party, and copies of all non-privileged correspondence and pleadings pertaining to any such claim or pending lawsuit in which the Debtor is a plaintiff.

    6.    Copies of all non-privileged correspondence and pleadings pertaining to any lawsuit pending with the Debtor as a defendant.

    7.    Information and documents relating to any departure of an insider, officer, or director from the Debtor since **January 1, 2018**.

    8.    A schedule of payments made by the Debtor to any of the parties listed in demand number 1 since **January 1, 2018**.

    9.    All (i) employment agreements, (ii) stock, shareholder, membership and operating, (iii) compensation, ownership or related agreements between the Debtor and any insider, officer, or director.

    10.    The following documentation related to all Board of Directors' Meetings since **January 1, 2018**.

    a.    Agenda related information packages;

    b.    Board resolutions and minutes; and

    c.    All other communications, reports, analysis and directions to or by the Debtor's board.

Please do not hesitate to call if you have any questions or comments about the above demands for production.

Sincerely,

KANE RUSSELL COLEMAN LOGAN PC

By:_____
Joseph M. Coleman

JMC/cd

cc:    Official Committee of Unsecured Creditors

7319810 v1 (72278.00002.000)