## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ZENERGY BRANDS, INC., *et al.*,[1] | § | Case No. 19-42886 |
| | § | |
| Debtors. | § | (Joint Administration Requested) |
| | § | |

### SECOND INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364 AND 507 (I) APPROVING POSTPETITION FINANCING, (II) AUTHORIZING USE OF CASH COLLATERAL, (III) GRANTING LIENS AND PROVIDING SUPERPRIORITYADMINISTRATIVE EXPENSE STATUS, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING AUTOMATIC STAY, AND (VI) GRANTING RELATED RELIEF, AND (VII) SCHEDULING A FINAL HEARING

The relief set forth on the following pages, number 1 through 47, and Exhibit A to this Order and Exhibit B to the Motion (as defined below), is hereby ORDERED, to the extent provided herein.

THIS MATTER having come before the Court on the motion (the "**Motion**") by Zenergy Brands, Inc., a corporation incorporated under the laws of the State of Nevada and its debtor affiliates (collectively, the "**Debtor**") as debtor-in-possession in the above-captioned chapter 11 case(s) (collectively, the "**Case**"), pursuant to Sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d), and 507 of title 11 of the United States Code (11 U.S.C. §§ 101, *et seq.*, as amended, the "**Bankruptcy Code**"), and Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), seeking entry of an interim order (this "**Interim Order**") and final order, *inter alia*:

---

[1] The Debtors in the above-captioned chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Zenergy Brands, Inc. (1686); NAUP Brokerage, LLC (7899); Zenergy Labs, LLC (8045); Zenergy Power & Gas, Inc. (1963); Enertrade Electric, LLC (8649); Zenergy & Associates, Inc. (4022); and Zen Technologies, Inc. (7309). The above-captioned Debtors' mailing address is 5700 Granite Pkwy, #200, Plano, TX 75024.

(i)     authorizing, under Sections 364(c) and 364(d) of the Bankruptcy Code and Bankruptcy Rule 4001(c), the Debtor to obtain secured, superpriority post-petition loans, advances, and other financial accommodations (the "**DIP Facility**"), on an interim basis for a period through and including the date of the Final Hearing (as defined below), pursuant to the terms and conditions of that certain  Senior Secured Revolving Credit Facility Agreement (as amended, restated, supplemented, or otherwise  modified from time to time, the "**Agreement**") by and among (a) the Debtor (b) the Guarantors,[2] and (c) TCA Special Situations Credit Strategies ICAV (the "**Lender**"), providing for a credit facility up to a principal amount of $5,000,000 with an initial principal advance of $2,000,000, substantially in the form of Exhibit B attached to the Motion; and

(ii)     authorizing the Debtor to execute and deliver the Agreement and all  other related documents and agreements, including, but not limited to, the Senior Secured Promissory Note, Security Agreement (including accompanying Stock Powers, Assignment of Membership Interests and Irrevocable Proxies) (collectively, the "**DIP Loan Documents**") and to perform such other acts as may be necessary or desirable in connection with the DIP Loan Documents; and

(iii)     granting allowed superpriority administrative expense claim status pursuant to Section 364(c)(1) of the Bankruptcy Code in the Case and any Successor Case (as defined herein) to all obligations owing under the Agreement and the other DIP Loan  Documents (collectively, and including all "Obligations" as defined in the Agreement, including all obligations with respect to letters of credit issued or deemed issued  under the Agreement, respectively, and, together, the "**DIP Obligations**"), subject to the priorities set forth herein; and

---

[2] Capitalized terms used by not defined have the meanings given to them in the DIP Loan Documents.

(iv)    authorizing the Debtor to use "Cash Collateral," as defined in Section 363(a) of the Bankruptcy Code, that the Debtor is holding or may obtain, pursuant to Bankruptcy Code Section 361 and 363 and Bankruptcy Rules 4001(b) and 6004; and

(v)    granting to the Lender automatically perfected security interests in and liens on all of the DIP Collateral (as defined herein), including, without limitation, all property constituting "Cash Collateral" as defined in Section 363(a) of the Bankruptcy Code, which liens shall be subject to the priorities set forth herein; and

(vi)    authorizing and directing the Debtor to pay the principal, interest, fees, expenses and other amounts payable under each of the DIP Loan Documents as they become due, including, without limitation, continuing commitment fees, upfront fees, administrative fees, any additional fees set forth in the DIP Loan Documents, the reasonable fees and disbursements of the Lender's attorneys, advisers, accountants, and other consultants, and all related expenses of the Lender, all to the extent provided by and in accordance with the terms of the respective DIP Loan Documents; and

(vii)    providing adequate protection to the Prepetition Senior Creditor (as defined herein) to the extent set forth herein; and

(viii)    vacating and modifying the automatic stay imposed by Section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Loan Documents and this Interim Order; and

(ix)    granting related relief; and

(x)    scheduling a final hearing (the "**Final Hearing**") on December 5, 2019 at 1:30 pm to consider the relief requested in the Motion and approving the form of notice with respect to the Final Hearing.

4815-5035-6654.1

The Court having considered the Motion, the Declaration of Joshua Campbell in support of the Chapter 11 petition and first day motions, including the Motion, the exhibits attached thereto, the DIP Loan Documents, and the evidence submitted or adduced and the arguments of counsel made at both interim hearings, including the agreements read into the record at the hearing on the Motion on November 18, 2019 ("**Agreement in the Record**") and embodied herein and in the Final Order (collectively the "**Interim Hearing**"); and notice of the Interim Hearing having been given in accordance with Bankruptcy Rules 4001(b), (c) and (d), 9014, and Local Bankruptcy Rule 2002-1; and the Interim Hearing to consider the interim relief requested in the Motion having been held, subject to the Final Hearing; and all  objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved  as set forth in the record or  overruled by the Court; and it appearing to the Court that, pursuant to Bankruptcy Rule 4001(c)(2), granting the interim relief requested is necessary to avoid immediate and irreparable  harm to the Debtor and its estate pending the Final Hearing, and otherwise is fair and  reasonable and in the best interests of the Debtor, its estate, and its creditors and equity  holders, and is essential for the continued operation of the Debtor's business; and after due  deliberation and consideration, and for good and sufficient cause appearing therefor;

BASED ON THE RECORD ESTABLISHED AT THE INTERIM HEARING BY THE DEBTORS, INCLUDING THE SUBMISSIONS OF DECLARATIONS AND THE REPRESENTATIONS OF COUNSEL, THE COURT HEREBY MAKES THE FOLLOWING  FINDINGS OF FACT AND CONCLUSIONS OF LAW (SUBJECT TO PARAGRAPH 33 34 OF THIS INTERIM ORDER):

4815-5035-6654.1

A.      *Petition Date*.  On October 24, 2019 (the "**Petition Date**"), the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code in the United States  Bankruptcy Court for the Eastern District of Texas, Plano Division (the  "**Court**"), commencing this Case.

B.      *Debtor-in-Possession*.  The Debtor is continuing  in  the  management  and operation of its business and properties as debtor-in-possession pursuant to Sections 1107  and 1108 of the Bankruptcy Code.   No trustee or examiner has been appointed in this Case.

C.      *Jurisdiction and Venue*.  This Court has jurisdiction, pursuant to 28 U.S.C. §§ 157(b) and 1334, over this Case, and over the  persons  and  property  affected  hereby. Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).  Venue for the Case and proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

D.      *Committee Formation*.  On November 4, 2019, the Office of the United States Trustee for Region 6 (the "**U.S. Trustee**") filed its Appointment of Official Unsecured Creditors' Committee [Docket No. 69]. As  of  the  date  hereof,  the  U.S.  Trustee  has  not  appointed  any other  official committee  in  this Case pursuant to Section 1102 of the Bankruptcy Code (each, a "**Statutory Committee**").

E.      *Debtor's Stipulations*.   After consultation  with  its  attorneys  and  financial advisors, <u>and  without  prejudice  to  the  rights  of  parties  in  interest  as  set  forth  in  paragraph 33 and as herein</u>, and subject to the entry of the Final Order, the Debtor (as opposed to the Committee or any other party-in-interest) admits, stipulates, acknowledges, and agrees  that (collectively,  paragraphs  E(i)  through  E(v)  below  are  referred  to  herein  as  the  "**Debtor's Stipulations**"):

(i)      *Prepetition Senior Debenture Documents*.   As of the Petition Date, the Debtor has outstanding senior secured debt evidenced by (i) that certain Securities Purchase Agreement, dated December 24, 2018 (the "**Prepetition Senior SPA**"), (ii) that certain Senior Secured, Convertible, Redeemable Debenture in the principal amount of $1,750,000, dated December 24, 2018, (iii) that certain Senior Secured, Convertible, Redeemable Debenture (Fee Debenture) in the principal amount of $16,000, maturing December 24, 2020, dated December 24, 2018, (iv) that certain Senior Secured, Convertible, Redeemable Debenture (Fee Debenture) in the principal amount of $16,000, maturing June 24, 2021, dated December 24, 2018, (v) that certain Promissory Note, dated October 10, 2019 (together, as amended, modified and supplemented from time to time, the "**Prepetition Senior Debentures**" and together with all related documents, guaranties and agreements, the "**Prepetition Senior Debenture Documents**"), by and among (a) the Debtor, (b) the Guarantors, (c) Alex Rodriguez, and (d) TCA Global Credit Master Fund, L.P. (the "**Prepetition Senior Creditor**").

(ii)      *Prepetition Senior Obligations*.   As of the Petition Date, the aggregate outstanding principal amount owed by the Debtor under the Prepetition Senior Debenture Documents was not less than $2,622,468.41 (the "**Prepetition Credit Loan**") (together with any interest, fees (including, without limitation, any early termination and prepayment fees), costs and other charges or amounts paid,  incurred or accrued prior to the Petition Date in accordance with the Prepetition Senior Debenture Documents, and further including all "Obligations" as described in the Prepetition Senior SPA, but excluding the payment or accrual of all interest, principal and attorney fees, costs and expenses, during the Debtors' Bankruptcy cases (the "**Prepetition Senior Obligations**").   As more  fully  set forth in the Prepetition

Senior Debenture Documents, prior to the Petition Date, the Debtor, the Guarantors and Alex Rodriguez granted security interests in and liens on any and all property, of any kind or description, tangible or intangible, real, personal or mixed, wheresoever located and whether then existing or thereafter arising or acquired, including, without limitation, the Collateral (as that term is identified in the Security Agreement dated December 24, 2018) (collectively, the "**Prepetition Collateral**"), to the Prepetition Senior Creditor (collectively, the "**Prepetition Senior Liens**") to secure repayment of the Prepetition Senior Obligations. Notwithstanding anything to the contrary in this Interim Order, the DIP Loan Documents, or the Prepetition Senior Debenture Documents, the Debtor does not stipulate that to liens on or security interests in its commercial tort claims or in the property of Enertrade Electric, LLC.

(iii)    *Validity, Perfection, and Priority of Prepetition Liens and Obligations.*    The Debtor (without limiting the rights of other parties in interest under paragraphs 33 and 34 of this Interim Order), and the Prepetition Senior Creditor acknowledge and agree that: (a) as of the Petition Date, the Prepetition Senior Liens on the Prepetition Collateral are valid, binding, enforceable, non-avoidable, and properly perfected (to the extent any such permitted liens were valid, binding, enforceable, properly perfected, non-avoidable and senior in priority to the Prepetition Senior Liens as of the Petition Date, the "**Prepetition Permitted Liens**");[3] (b) as of the Petition Date, the Prepetition Senior Liens have priority over any and all other liens, if any, on the Prepetition Collateral, subject only to certain other liens otherwise permitted by the Prepetition Senior Debenture Documents; (c) the

---

[3] For purposes of this Interim Order, Prepetition Permitted Liens shall include all liens that were valid, senior, enforceable, nonavoidable, and perfected under applicable law as of the Petition Date. Nothing herein shall constitute a finding or ruling by this Court that any such Prepetition Permitted Liens are valid, senior, enforceable, perfected or non-avoidable. Moreover, nothing shall prejudice the rights of any party in interest including, but not limited to any Statutory Committee to challenge the validity, priority, enforceability, seniority, avoidability, perfection or extent of any such Prepetition Permitted Lien and/or security interest.

4815-5035-6654.1

Prepetition Senior Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtor; (d) intentionally omitted; (e) the Debtor agrees not to sue[4] Prepetition Senior Creditor or any of its respective affiliates, agents, attorneys, advisors, professionals, officers, directors or employees arising out of, based on, or related to the Prepetition Senior Debenture Documents; (f) as of the Petition Date, the value of the Prepetition Collateral securing the Prepetition Senior Obligations may have exceeded the amount of those obligations; in which case, the Prepetition Senior Obligations would be allowed secured claims within the meaning of Section 506 of the Bankruptcy Code, in an aggregate principal amount of not less than $2,622,468.41.

(iv)    *Cash Collateral*.   The Debtor acknowledges and stipulates that all of the Debtor's cash, including the cash in its deposit accounts, wherever located, whether as original collateral or proceeds of other Prepetition Collateral, constitute Cash Collateral and is Prepetition Collateral of the Prepetition Senior Creditor.

F.    *Findings Regarding the Post-petition Financing*.

(i)    *Request for Post-petition Financing*.   The Debtor seeks authority to (a) enter into the DIP Facility on the terms described herein and in the DIP Loan Documents, and (b) use Cash Collateral on the terms described herein to administer the Case and fund its operations.   At the Final Hearing, the Debtor will seek final approval of the proposed postpetition financing arrangements and use of Cash Collateral arrangements pursuant to a proposed final order (the "**Final Order**"), which shall be in form and substance acceptable to the Lender.  Notice of the Final Hearing and Final Order will be provided in accordance with this Interim Order.

---

[4] Paragraph 14.21 in the DIP Loan Documents shall hereby be deemed amended from a release and waiver to a covenant not to sue.

4815-5035-6654.1

(ii)    *Prepetition Liens.* The Prepetition Senior Creditor has consented to permit the Prepetition Senior Lien and the DIP Lien to be secured on a *pari passu* basis under the terms and conditions set forth in this Interim Order and is entitled to receive adequate protection of its interests as more fully described below. The Prepetition Senior Liens and the DIP Liens shall be held by the Prepetition Senior Creditor and the Lender on a *pari passu* and pro-rata basis between the Prepetition Senior Creditor and the Lender, in proportion to such creditor's outstanding financing or principal amount, as applicable, owing under Prepetition Senior Debenture Documents and the DIP Loan Documents, notwithstanding anything to the contrary contained therein and irrespective of: (i) dates, times or order of when a creditor made its loan or financing available; (ii) the time, order or method of attachment or perfection of the security interests created in favor of either creditor; (iii) the time or order of filing or recording of financing statements or other documents filed or recorded to perfect security interests in any collateral; (iv) anything contained in any filing or agreement to which any creditor now or hereafter may be a party; (v) the rules for determining perfection or priority under the Uniform Commercial Code or any other law governing the relative priorities of secured creditors; and (vi) the time or order of obtaining control or possession of any collateral.

(iii)    *Immediate Need for Post-petition Financing and Use of Cash Collateral.* The Debtor's need to use Cash Collateral and to obtain credit pursuant to the DIP Facility is immediate and critical to enable the Debtor to continue operations and to administer and preserve the value of its estate. The ability of the Debtor to finance its operations, maintain business relationships, pay its employees, protect the value of its assets and otherwise finance its operations requires the availability of working capital from the DIP Facility and the use of Cash Collateral, the absence of either of which would

4815-5035-6654.1

immediately and irreparably harm the Debtor, its estate, its creditors and equity holders, and the possibility for a successful administration of the Case. The Debtor does not have sufficient available sources of working capital and financing to operate its business or to maintain its properties in the ordinary course of business without the DIP Facility and authorized use of Cash Collateral.

(iv)    *No Credit Available on More Favorable Terms*. Given its current financial condition, financing arrangements, and capital structure, the Debtor is unable to obtain financing from sources other than the Lender on terms more favorable than the DIP Facility. The Debtor has been unable to obtain unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtor has also been unable to obtain credit: (a) having priority over that of administrative expenses of the kind specified in Sections 503(b), 507(a), and 507(b) of the Bankruptcy Code; (b) secured by a lien on property of the Debtor and its estate that is not otherwise subject to a lien; or (c) secured solely by a junior lien on property of the Debtor and its estate that is subject to a lien. Financing on a post-petition basis is not otherwise available without granting the Lender (1) perfected security interests in and liens on (each as provided herein) all of the Debtor's existing and after-acquired assets with the priorities set forth herein, (2) superpriority claims, and (3) the other protections set forth in this Interim Order.

(v)    *Use of Proceeds of the DIP Facility*. As a condition to entry into the Agreement, the extensions of credit under the DIP Facility, and the authorization to use Cash Collateral, the Lender requires, and the Debtor agrees, that proceeds of the DIP Facility shall be used in a manner consistent with the terms and conditions of the DIP Loan Documents and in accordance with the budget (a copy of which is attached as **Exhibit A** hereto, as the same

4815-5035-6654.1

may be modified from time to time consistent with the terms of the DIP Loan Documents, and subject to such variances as may be permitted thereby, the "**Budget**"), solely for (i) postpetition operating expenses and other working capital, including, but not limited to, funding the amounts immediately required to enter into certain Master Energy Service Agreements (each a "**MESA**") absent which the Debtor would not be able to continue to operate, (ii) certain transaction fees and expenses, (iii) permitted payment of costs of administration of the Case, including professional fees, (iv) Prepetition Senior Creditor Adequate Protection Payments, and (v) as otherwise permitted under the DIP Loan Documents, as applicable.

(vi)     *Application of Proceeds of DIP Collateral*.  As a condition to entry into the DIP Loan Documents, the extension of credit under the DIP Facility, and the authorization to use Cash Collateral, the Debtor and the Lender have agreed that the proceeds of DIP Collateral (as defined herein) shall be applied in accordance with paragraph 18(a) of this Interim Order.

G.     *Adequate Protection*. The Debtor shall pay to the Prepetition Senior Creditor $95,000 upon the entry of this Interim Order, which payment satisfies the $95,000 Document Prep Fee (as defined below). The Prepetition Senior Creditor shall receive (i) subject to the priorities set forth in paragraphs 12 and 13 below, the Adequate Protection Liens (as defined herein) to secure the Prepetition Senior Obligations and Adequate Protection Superpriority Claims (as defined herein) with respect to the Prepetition Senior Obligations, and (ii) additional adequate protection in the form of (A) payment of the Prepetition Senior Obligations from the proceeds of DIP Collateral as set forth in paragraph 18(a) below and (B) as allowed herein, indemnities and other amounts, consistent with the terms of this Interim Order, with respect to the Prepetition Senior Obligations in accordance with the Prepetition Senior Debenture Documents (collectively, the "**Prepetition Senior Creditor Adequate**

**Protection Payments**").  For the avoidance of doubt, the Adequate Protection Liens and the Adequate Protection Superpriority Claims each shall be  junior in all respects to the DIP Liens and the DIP Carve Out, and the Adequate Protection  Superpriority Claims are junior in all respects to the DIP Carve Out and DIP Superpriority Claim (as defined herein). Notwithstanding anything to the contrary in this Interim Order, the DIP Loan Documents, or the Prepetition Senior Debenture Documents (A) only the following fees and expenses shall be allowed and paid pursuant to this Interim Order or the Final Order: (i) $15,000 diligence fee, (ii) $95,000 for DIP Loan Document preparation and related legal fees (**"Document Prep Fee"**) referenced above, and (iii) 4% revolving-loan commitment fee (collectively the **"DIP Fees"**). No other fees shall be allowed or paid pursuant to this Interim Order or the Final Order and (B) the Prepetition Senior Creditor shall not be entitled to payment or accrual of principal, interest, or attorney fees, costs or expenses during the Debtors' bankruptcy case.

H.     *Sections 506(c) and 552(b)*.  In light of (i) the Lender's agreement to subordinate its liens and superpriority claims, as applicable, to the DIP Carve Out (as defined  herein); and (ii) the Prepetition Senior Creditor's agreement to subordinate the Adequate Protection Superpriority Claims and the Adequate Protection Liens to the DIP Carve Out, the  DIP Liens, and the DIP Superpriority Claim, in each Case as applicable, upon entry of the Final Order, the Lender and the Prepetition Senior Creditor is entitled to a waiver  of (a) the provisions of Section 506(c) of the Bankruptcy Code, and (b) any "equities of the case"  claims under Section 552(b) of the Bankruptcy Code.

I.     *Good Faith of the Lender*.

(i)     *Willingness to Provide Financing*.    The Lender has indicated a willingness to provide financing to the Debtor subject to: (a) the entry of this Interim

Order and the Final Order; (b) approval of the terms and conditions of the DIP Facility and the DIP Loan Documents; and (c) entry of findings by this Court that such financing is essential to the Debtor's estate, that the Lender is extending credit to the Debtor pursuant to the DIP Loan Documents in good faith, and that the Lender's claims, superpriority claims, security interests, liens, rights, and other protections granted pursuant to this Interim Order and the DIP Loan Documents will have the protections provided in Section 364(e) of the Bankruptcy Code and will not be affected by any subsequent reversal, modification, vacatur, amendment, reargument or reconsideration of this Interim Order or any other order.

(ii)     *Business Judgment and Good Faith Pursuant to Section 364(e).*  The extension of credit under the DIP Facility reflects the Debtor's exercise of prudent business judgment consistent with its fiduciary duty, and is supported by reasonably equivalent value and consideration.    The DIP Facility and the use of Cash Collateral were negotiated in good faith  and at arms'-length among the Debtor and the Lender.   The use of Cash Collateral and credit to be extended under the DIP Loan Documents shall be deemed to have been so allowed, advanced, made, used or extended in good faith, and for valid business purposes and uses, within the meaning of Section 364(e) of the Bankruptcy Code, and the Lender is therefore entitled to the protection and benefits of Section 364(e) of the Bankruptcy Code and this Interim Order.

J.     *Notice*.  Notice of the Interim Hearing and the emergency relief requested in the Motion has been provided by the Debtor, whether by facsimile, email, overnight courier or hand delivery, to certain parties in interest, including: (i) the U.S. Trustee for the Eastern District of Texas; (ii) the Securities and Exchange Commission; (iii) the Internal Revenue Service; (iv) the parties included on the Debtor's consolidated list of thirty (30) largest unsecured creditors; (v)

counsel to the Prepetition Senior Creditor; and (vi) those parties, if any, who have filed a notice of appearance and request for service of pleadings in this Case pursuant to Bankruptcy Rule 2002. The Debtor has made reasonable efforts to afford the best notice possible under the circumstances and such notice is good and sufficient to permit the interim relief set forth in this Interim Order, and no other or further notice is or shall be required.

K.    *Immediate Entry*. Sufficient cause exists for immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2).

L.    *Reservation of Rights*.  Notwithstanding anything to the contrary in the foregoing Paragraphs A through K, neither the Committee nor any other party-in-interest shall be bound in any manner thereby pending the Final Hearing and expressly subject to the Challenge Rights (as defined below) and Paragraph 33.

Based on the foregoing findings and conclusions, the Motion and the record before the Court with respect to the Motion, and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED that:

1.    Interim Financing Approved. The Motion is granted on an interim basis, the Interim Financing (as defined herein) is authorized and approved on an interim basis, and the use of Cash Collateral on an interim basis is authorized, subject to the terms and conditions set forth in this Interim Order, pending entry of the Final Order.

2.    Objections Overruled.  Subject to the agreements read into the record on November 18, 2019 at the hearing on the Motion (the **"Agreements in Record"**), all objections to the Interim Financing to the extent not withdrawn or resolved are hereby overruled, however, all of the Committee's objections are expressly preserved for the Final Hearing.

**DIP Facility Authorization**

4815-5035-6654.1

3.      <u>Authorization of the DIP Financing and DIP Loan Documents</u>.   Pending entry of the Final Order, the Debtor is expressly and immediately authorized and empowered (i) to execute and deliver the  DIP Loan Documents, (ii) to incur and to perform the DIP Obligations in  accordance with, and subject to, the terms of this Interim Order, the DIP Loan Documents, and the Budget, (iii) to deliver all instruments and documents that may be  necessary or required for performance by the Debtor under the DIP Facility and the creation and  perfection of the DIP Liens described  in  and  provided  for  by  this  Interim  Order  and  the  DIP  Loan Documents.   All  collections and proceeds, whether from ordinary course collections, asset sales, debt issuances,  insurance recoveries, condemnations or otherwise, will be deposited and applied  as  required  by   this  Interim  Order  and  the  DIP  Loan  Documents.    Upon  execution and delivery, the DIP Loan  Documents shall represent valid and binding obligations of the Debtor, enforceable against the Debtor and its estate in accordance with their terms.

4.      <u>Authorization to Borrow</u>.  Until  the  Revolving Loan Maturity Date (as defined in  the  Agreement),  and  subject to the terms, conditions, and limitations set forth in the DIP Loan Documents, the DIP Facility and this Interim Order, and to prevent immediate and irreparable harm to the Debtor's estate, the Debtor is hereby  authorized to request extensions of credit under the DIP Facility on an interim basis up to an aggregate principal amount of $5,000,000.00 at any one time  outstanding in accordance with the Agreement (the "**<u>Interim Financing</u>**").

5.      <u>DIP Obligations.</u>   The  DIP  Loan  Documents  and  this  Interim  Order  shall constitute and evidence the validity and binding effect of the Debtor's DIP Obligations, which DIP Obligations shall  be  enforceable against the  Debtor,  its  estate,  and  any  successors thereto, including without limitation, any trustee or other estate representative appointed in the

4815-5035-6654.1

Case, or any case under Chapter 7 of the Bankruptcy Code upon the conversion of the Case (collectively, "**Successor Case**").  Upon entry of this Interim Order and subject to the entry of the Final Order, the DIP Obligations will include all loans and any other indebtedness or obligations, contingent or absolute, that  may now or from time to time be owing by the Debtor to the Lender  under the DIP Loan Documents or this Interim Order, including, without limitation, all principal,  accrued interest, costs, fees, expenses and other amounts owed pursuant to the DIP Loan  Documents, and shall be joint and several obligations of the Debtor in all respects.

6.    Post-petition Liens and Collateral.

(a)    Effective  immediately upon the entry of this Interim Order, and subject to the DIP Carve Out, pursuant  to  Sections 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, and to secure repayment of the DIP Obligations, the Lender is hereby granted,  continuing valid, binding, enforceable, non-avoidable  and automatically and properly perfected  post-petition security interests in and liens (collectively, the "**DIP Liens**") on any and all presently owned and hereafter acquired assets and real and personal property of the Debtor,  including, without limitation, the following (the "**DIP Collateral**"):

(i)    all Accounts;[5]

(ii)    all Goods, including Equipment, Inventory and Fixtures;

(iii)    all Documents, Instruments and Chattel Paper;

(iv)    all Letters of Credit and Letter-of-Credit Rights;

(v)    all Securities Collateral;

(vi)    all Investment Property;

---

[5] All defined terms in the description of DIP Collateral shall have the meanings ascribed thereto in the DIP Loan Documents.  All terms not specifically defined in the DIP Loan Documents shall have the meanings ascribed to such terms in Article 8 or 9 of the Uniform Commercial Code, as applicable.

(vii)   all Intellectual Property Collateral;

(viii)   effective upon entry of the Final Order, fifty percent (50%) of all Commercial Tort Claims and proceeds thereof;

(ix)   all General Intangibles;

(x)   all Deposit Accounts;

(xi)   all Supporting Obligations;

(xii)   all money, cash or cash equivalents;

(xiii)   all credit balances, deposits and other property now or hereafter held or received by or in transit to the Lender or at any other depository or other institution from or for the account of the Debtor, whether for safekeeping, pledge, custody, transmission, collection, or otherwise.

(i)   all proceeds of leases of real property;[6]

(xiv)   all owned real property;

(xv)   effective upon the entry of the Final Order, the Debtor's rights under Section 506(c) of the Bankruptcy Code and the proceeds thereof;

(xvi)   to the extent not otherwise described above, all receivables and all present and future claims, rights, interests, assets and properties recovered by or on behalf of the Debtor;

(xvii)   all books, records, and information relating to any of the foregoing and/or to the operation of the Debtor's business, and all rights of access to such books, records, and information, and all property in which such books, records and information are stored, recorded and maintained; and

---

[6] For the avoidance of doubt, the DIP Liens extend only to the proceeds of leased real property and are not direct liens on the Debtor's leases of real property unless such liens are expressly permitted pursuant to the underlying lease documents.

4815-5035-6654.1

(xviii) to the extent not otherwise covered by clause (i) through (xix) above, all other personal property of the Debtor, expressly excluding any and all Chapter 5 and Section 724(a) causes of action (including Section 550) and proceeds thereof ("**Avoidance Actions**") and fifty percent (50%) of any Commercial Tort Claims and proceeds thereof, whether tangible or intangible and all Proceeds and products of each of the foregoing and all accessions to, substitutions and replacements for, and  rents, profits and products of each of the foregoing, and any and all proceeds of any insurance,  indemnity, warranty or guaranty payable to the Debtor from time to time with respect to any of  the foregoing.

(b)      Effective upon the entry of the Interim Order, (i) all DIP Liens shall each be and maintain at all times a security interest priority on a *pari passu* basis with the Prepetition Senior Liens, (ii) all  existing blocked account agreements, deposit account control agreements, securities account  control agreements, credit card acknowledgements, credit card agreements, collateral access  agreements, landlord agreements, warehouse agreements, bailee agreements, carrier agency   agreements, customs broker agency agreements, subordination agreements and freight forwarder  agreements constituting Prepetition Senior Debenture Documents, and all existing Uniform  Commercial Code filings and all existing filings with the United States Patent and Trademark  Office or the United States Copyright Office with respect to the recordation of an interest in the  intellectual property of the Debtor, which in each case was filed by the Prepetition Senior Creditor, shall in each case be deemed to be delivered and/or  filed in connection with the DIP Facility, shall constitute DIP Credit Documents and shall remain  in full force and effect without any further action by the Debtor, the Lender, or any other person, and in each case the Lender shall be deemed to be a party thereto, (iii) any and all references in any such  agreements or documents to the "Credit

Agreement" shall hereafter be deemed to mean and refer to the Prepetition Credit Agreement and the Agreement, and (iv) any and all references in any such agreements or documents to the "Loan Documents" shall hereafter be deemed to mean and refer to the Prepetition Senior Debenture Documents and the DIP Credit Documents, in each case as amended, modified, supplemented or restated and in effect from time to time. Except as set forth in this Interim Order, nothing in this Interim Order shall be deemed to impair or otherwise modify the rights of the Prepetition Senior Creditor under any such agreements or documents as in effect prior to the date hereof.

7.     <u>DIP Lien Priority</u>.

(a)     *DIP Liens*.   Subject and subordinate to payment of the DIP Carve Out, the Prepetition Senior Liens and the DIP Liens shall be held by the Prepetition Senior Creditor and the Lender on a *pari passu* and pro-rata basis between the Prepetition Senior Creditor and the Lender, in proportion to such creditor's outstanding financing or principal amount, as applicable, owing under Prepetition Senior Debenture Documents and the DIP Loan Documents, notwithstanding anything to the contrary contained therein and irrespective of: (i) dates, times or order of when a creditor made its loan or financing available; (ii) the time, order or method of attachment or perfection of the security interests created in favor of either creditor; (iii) the time or order of filing or recording of financing statements or other documents filed or recorded to perfect security interests in any collateral; (iv) anything contained in any filing or agreement to which any creditor now or hereafter may be a party; (v) the rules for determining perfection or priority under the Uniform Commercial Code or any other law governing the relative priorities of secured creditors; and (vi) the time or order of obtaining control or possession of any collateral.

4815-5035-6654.1

(b)    Other than as set forth herein or as further ordered by the Court, and subject and subordinate to the DIP Carve Out, the DIP Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Case or any Successor Case.  The DIP Liens shall be valid and enforceable against any trustee or other estate representative appointed in the Case or any Successor Case, upon the conversion of the Case to case under Chapter 7 of the Bankruptcy Code (or in any other Successor Case), and/or upon the dismissal of any of the Case or Successor Case.  Subject to paragraph 33 and 34 of this Interim Order, the DIP Liens shall not be subject to challenge under Sections 510, 549, or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of the estate pursuant to Section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the DIP Liens.

(c)    *Prepetition Senior Liens*.  For the avoidance of doubt, the Prepetition Senior Liens shall be *pari passu* with the DIP Liens and not junior to (i) the DIP Liens; (ii) the Adequate Protection Liens described in paragraph 12 below; (iii) the Adequate Protection Superpriority Claims; and (iv) the Prepetition Permitted Liens.

8.    DIP *Pari Passu* Superpriority Claim.

(a)    *Lender Pari Passu Claim*.   Upon entry of this Interim Order, the Lender is hereby granted, pursuant to Section 364(c)(1) of the Bankruptcy Code, an allowed superpriority administrative expense claim in the Case and any Successor Case  (collectively, the "**DIP Superpriority Claim**") for all DIP Obligations.  The DIP Superpriority Claim shall (i) be subject and subordinate to the DIP Carve Out, (ii) not be entitled to payment from the proceeds of the Avoidance Actions or 50% of the proceeds of the Commercial Tort Claims, (iii) be *pari passu* with the Prepetition Senior Liens, and (iv) otherwise have priority over any and

all administrative expenses of the kinds specified in or ordered pursuant to Sections 503(b) and 507(b) of the Bankruptcy Code, as provided under Section 364(c)(1) of the Bankruptcy Code.

(b)     *Priority of DIP Superpriority Claim.* Except the DIP Carve Out, Avoidance Actions and 50% of Commercial Tort Claims, the DIP Superpriority Claim shall be payable from and have recourse to all pre- and post-petition property of the Debtor and all proceeds thereof, subject only to the payment in full in cash of the DIP Obligations.

(c)     The Prepetition Senior Liens and the DIP Liens shall be held by the Prepetition Senior Creditor and the Lender on a *pari passu* and pro-rata basis between the Prepetition Senior Creditor and the Lender, in proportion to such creditor's outstanding financing or principal amount, as applicable, owing under Prepetition Senior Debenture Documents and the DIP Loan Documents, notwithstanding anything to the contrary contained therein and irrespective of: (i) dates, times or order of when a creditor made its loan or financing available; (ii) the time, order or method of attachment or perfection of the security interests created in favor of either creditor; (iii) the time or order of filing or recording of financing statements or other documents filed or recorded to perfect security interests in any collateral; (iv) anything contained in any filing or agreement to which any creditor now or hereafter may be a party; (v) the rules for determining perfection or priority under the Uniform Commercial Code or any other law governing the relative priorities of secured creditors; and (vi) the time or order of obtaining control or possession of any collateral.

9.     No Obligation to Extend Credit.     Under the terms of this Interim Order, the Lender shall not have any obligation to make any loan or advance under the DIP Loan Documents unless all of the conditions precedent to the making of such extension of credit

4815-5035-6654.1

or the issuance of such letter of credit under the applicable DIP Loan Documents and this Interim Order have been satisfied in full or waived by the Lender, as applicable, in its sole discretion.

10.    <u>Use of DIP Facility Proceeds.</u>  From and after the Petition Date, the Debtor shall use advances of credit under the DIP Facility only for the purposes specifically set forth in this Interim Order and the DIP Loan Documents, and in compliance with the Budget (including, without limitation, to make Prepetition Senior Creditor Adequate Protection Payments), a copy of which has been delivered to the Lender and the Prepetition Senior Creditor.

**<u>Authorization to Use Cash Collateral</u>**

11.    <u>Authorization to Use Cash Collateral</u>.  Subject to the terms and conditions of this Interim Order and the DIP Loan Documents, and in accordance with the Budget, the Debtor is authorized to use Cash Collateral until the Revolving Loan Maturity Date; <u>provided</u>, <u>however</u>, that during the Remedies Notice Period (as defined herein) the Debtor may use Cash Collateral solely to meet payroll (other than severance) and to pay expenses critical to the preservation of the Debtor and its estate as agreed by the Lender, in its sole discretion, in each case in accordance with the terms and provisions of the Budget.  Nothing in this Interim Order shall authorize the disposition of any assets of the Debtor or its estate outside the ordinary course of business (which shall be subject to further Orders of this Court), or the Debtor's use of any Cash Collateral or other proceeds resulting therefrom, except as permitted in this Interim Order, the DIP Loan Documents, and in accordance with the Budget.

12.    <u>Adequate Protection Payments and Adequate Protection Liens</u>.

(a)    *Adequate Protection Payments*.  The Prepetition Senior Creditor shall receive adequate protection in the form of the Prepetition Senior Creditor Adequate Protection Payments.

4815-5035-6654.1

(b)    *Creation of Adequate Protection Liens*.  Subject and subordinate to the DIP Carve Out, the Avoidance Actions and 50% of Commercial Tort Claims, the Prepetition Senior Creditor is hereby granted, pursuant to  Sections 361 and 363 of the Bankruptcy Code, valid and perfected replacement and additional  security interests in, and liens on all of the Debtor's right, title and interest in, to and under all  DIP Collateral to the extent, validity and priority of the Prepetition Senior Liens and only to the extent of the dimunition of the Prepetition Collateral (the "**Adequate Protection Liens**").  The Adequate Protection Liens granted to the Prepetition Senior Creditor shall secure Prepetition Senior Obligations.  The Adequate Protection Liens are and shall be valid,  binding, enforceable and fully perfected as of the date hereof extent, validity and priority of the Prepetition Senior Liens and only to the extent of the dimunition of the Prepetition Collateral and subordinate and subject only to (i) the DIP Liens, (ii) the Permitted Prior Liens, and (iii) the DIP Carve Out.

(c)    *Treatment of Adequate Protection Liens*.  Other than as set forth herein or as further ordered by the Court, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or with any lien or security interest heretofore or hereinafter granted in the Case or any Successor Case.   The Adequate Protection Liens shall be valid and enforceable against any trustee or other estate representative appointed in the Case or any Successor Case, upon the conversion of the Case to a case under Chapter 7 of the Bankruptcy Code (or in any Successor Case), and/or upon the dismissal of the Case or any Successor Case.

(d)    *Payment of Prepetition Senior Creditor's Professional Fees*.  In addition to the amounts identified in the Budget, the Debtor shall pay, upon entry of the Final Order, except as specifically and expressly allowed in this Interim Order, the postpetition reasonable and documented fees, costs and expenses incurred by the Prepetition Senior Creditor and the

4815-5035-6654.1

reasonable and documented fees, costs and expenses of its respective legal advisors (specifically: (i) Shraiberg, Landau & Page P.A. and (ii) Lucosky Brookman (collectively, the "**Secured Creditor Professionals**").  The Prepetition Senior Creditor agrees that, to the extent it is later determined to be undersecured, any payments made under this paragraph 12(c) shall be recharacterized as payments on the principal amount of the prepetition loans.  The invoices for the fees and expenses of the Prepetition Senior Creditor to be paid pursuant to this paragraph 12(c) hereof shall be provided to counsel to the Debtor, with a copy to the U.S. Trustee and counsel to any official committee (collectively, the "**Fee Notice Parties**").  The invoices to be provided to the Fee Notice Parties shall contain reasonable detail, may contain redactions, and the provision of such invoices shall not constitute a waiver of the attorney-client privilege or any benefits of the attorney work product doctrine.  If no objection to payment of the requested fees and expenses are made in writing by any of the Fee Notice Parties within ten (10) calendar days after delivery of such invoices (the "**Fee Objection Period**"), then, without further order of or application to the Court or notice to any other party, such fees and expenses shall be promptly paid by the Debtor.  If an objection (solely as to reasonableness) is made by any of the Fee Notice Parties within the Fee Objection Period to payment of the requested fees and expenses, then only the disputed portion of such fees and expenses shall not be paid until the objection is resolved by the applicable parties in good faith or by order of the Court, and the undisputed portion shall be promptly paid by the Debtor.

13.     Adequate Protection Superpriority Claims.

(a)     *Superpriority Claim of Prepetition Senior Creditor*.   Subject and subordinate to the DIP Carve Out, as further adequate  protection of the interests of the Prepetition Senior Creditor with respect to the Prepetition Senior  Obligations,  the Prepetition

Senior Creditor is hereby granted an allowed administrative claim against the Debtor's estate under Sections 503 and 507(b) of the Bankruptcy Code (the "**Adequate Protection Superpriority Claims**") to the extent that the Adequate Protection Liens do not adequately protect against any diminution in the value in the aggregate of the Prepetition Senior Creditor's interests in the Prepetition Collateral.

(b)     *Priority of Adequate Protection Superpriority Claims*.  The Adequate Protection Superpriority Claim granted to the Prepetition Senior Creditor shall be junior to the DIP Carve Out, the Prepetition Permitted Liens, the DIP Liens, the DIP Superpriority Claim and the Adequate Protection Liens and shall otherwise have priority over administrative expenses of the kinds specified in or ordered pursuant to Sections 503(b) and 507(b) of the Bankruptcy Code.  Notwithstanding the foregoing, the proceeds of Avoidance Actions and fifty percent (50%) of the Commercial Tort Claims shall not be payable to or otherwise be subject to the Adequate Protection Superpriority Claims, which shall be subordinate to such proceeds.

**Provisions Common to DIP Financing and Use of Cash Collateral Authorizations**

14.     Amendments.  The DIP Loan Documents may from time to time be amended, modified, or supplemented by the parties thereto without notice or a hearing if: (i) in the reasonable judgment of the Debtor and the Lender, the amendment, modification, or supplement (A) is in accordance with the DIP Loan Documents, (B) is not prejudicial in any material respect to the rights of third parties, and (C) has been consented to by the Lender, and (ii) a copy (which may be provided through electronic mail or facsimile) of the form of amendment, modification or supplement is provided to counsel for any Statutory Committee and the U.S. Trustee at least one (1) Business Day prior to the effective date of the amendment, modification or supplement.

4815-5035-6654.1

15.     <u>Budget Maintenance / Acceptable Variance</u>.  The Budget and any modification
to, or amendment or update of, the Budget shall be in form and substance reasonably acceptable
to the Lender and  approved by the Lender, in its Permitted Discretion.   The Debtor shall
comply with and update the Budget from time  to time in accordance with the DIP Loan
Documents (provided that any update shall be in form and substance reasonably acceptable to
the Lender and approved by the Lender, in its Permitted Discretion).   On or before
Wednesday of each week, the Debtor shall deliver to the Lender an Approved Budget Variance
Report (with delivery of the same to the United  States Trustee and the Statutory Committee, if
any, each week after delivery to the Lender).   During the tenth (10th) week of the initial
Budget, the Debtor  shall submit a budget for the next successive thirteen-week period to the
Lender, which budget shall be in form and substance reasonably acceptable to the Lender and
approved by the Lender, in its Permitted Discretion.   Approved Budget Variance means that
actual amounts spent for each tested period may not vary from the applicable Budget period
(including any amounts deemed "rolled over" from a previous week) by more 10% on a
cumulative basis.

16.     <u>Modification of Automatic Stay</u>.  The automatic stay imposed under Section
362(a) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and
provisions of this Interim Order, including, without limitation, to:  (a) permit the Debtor to grant
the DIP Liens, the Adequate Protection Liens, the DIP Superpriority Claim, and the Adequate
Protection Superpriority Claims; and (b) authorize the Debtor to pay, and the Lender and
Prepetition Senior Creditor to retain and apply, payments made in accordance with the
terms of this Interim Order.

17.     <u>Perfection of DIP Liens and Adequate Protection Liens</u>.

4815-5035-6654.1

(a)     *Automatic Perfection of Liens*.  This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of all liens granted herein, including the DIP Liens and the Adequate Protection Liens, without the necessity of filing or recording any financing statement, mortgage, notice, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement, collateral access agreement, customs broker agreement or freight forwarding agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP Liens and the Adequate Protection Liens, or to entitle the Lender or the Prepetition Senior Creditor  to the priorities granted herein.   Notwithstanding the foregoing, the Lender is authorized to  file, as it in its Permitted Discretion deems necessary, such financing statements, mortgages, notices of liens and other similar documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence any of the DIP Liens, and all such financing statements, mortgages, notices and other documents shall be deemed to have been filed or recorded as of the Petition Date; provided, however, that no such filing  or recordation shall be necessary  or required to create, perfect or enforce the DIP Liens.  The Debtor is authorized to  execute and deliver promptly upon demand to the Lender all such financing statements, mortgages, control agreements, notices and other documents as the Lender may reasonably request.  The Lender, in its Permitted Discretion, may file  a photocopy of this Interim Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements,  notices of lien or similar instrument.

18.     Application of Proceeds of DIP Collateral.

4815-5035-6654.1

(a)     The proceeds of DIP Collateral shall be applied, subject to the terms of this Interim Order, as follows:

(i)     subject to clause (ii) below, (x) all payments received by the Lender in respect of any DIP Obligations and all funds transferred and credited to the "Segregated Account" (as defined in the Agreement) that the Debtor anticipates opening, and (y) all net proceeds from any Disposition of DIP Collateral, each shall be applied as follows: *first*, to payment of fees, costs and expenses payable and reimbursable by the Debtor under the Agreement and the other DIP Loan Documents; *second*, to payment of all DIP Obligations in accordance with the DIP Loan Documents: and *third*, to the Debtor's operating account, or for the account of and paid to whoever may be lawfully entitled thereto; and

(ii)     all net proceeds from any Disposition of DIP Collateral shall be applied as follows: *first*, a pro rata payment to the Prepetition Senior Creditor and the Lender, in proportion to such creditor's outstanding principal amount, as applicable, owing under Prepetition Senior Debenture Documents and the DIP Loan Documents, *second*, in accordance with clause (i) above.

(b)     Nothing provided herein shall be deemed to affect or modify priority of the DIP Carve Out or the allocation of the proceeds of DIP Collateral set forth in the DIP Loan Documents.

(c)     The Debtor shall not, directly or indirectly, voluntarily purchase, redeem, defease, prepay any principal of, premium, if any, interest or other amount payable in respect of any indebtedness prior to its scheduled maturity, other than the DIP Obligations and the Prepetition Senior Obligations (each in accordance with the DIP Loan Documents and this Interim Order) and obligations authorized by an order of the Court.

4815-5035-6654.1

19.     <u>Proceeds of Subsequent Financing</u>.  If the Debtor, any trustee, any examiner with enlarged powers, any responsible officer, or any other estate representative subsequently appointed in this Case or any Successor Case shall obtain credit or incur debt pursuant to Sections 364(b), 364(c) or 364(d) of the Bankruptcy Code in violation of the DIP Loan Documents at any time prior to the repayment in full of all DIP Obligations and the termination of the Lender's obligations to extend credit under the DIP Facility, including subsequent to the confirmation of any plan of reorganization or liquidation with respect to the Debtor and the Debtor's estate, then all the cash proceeds derived from such credit or debt shall immediately be turned over to the Lender to be applied as set forth in paragraph 18(a) herein.

20.     <u>Maintenance of DIP Collateral</u>.  Until the payment in full in cash of all DIP Obligations and the termination of the Lender's obligations to extend credit under the DIP Loan Documents, as provided therein, the Debtor shall: (a) insure the DIP Collateral as required under the DIP Facility; and (b) maintain the cash management system which has been agreed to by the Lender or as otherwise required by the DIP Loan Documents.

21.     <u>Disposition of DIP Collateral</u>.  Unless otherwise authorized by the Court, the Debtor shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral except as permitted by the DIP Loan Documents.  Nothing provided herein shall limit the right of the Lender or the Prepetition Senior Creditor to object to any proposed disposition of the DIP Collateral.

22.     <u>Revolving Loan Maturity Date</u>.  On the Revolving Loan Maturity Date, (i) all DIP Obligations shall be immediately due and payable, and all commitments to extend credit under the DIP Facility will terminate, and (ii) all authority to use Cash Collateral shall cease,

provided, however, that during the Remedies Notice Period (as defined herein), the Debtor may use Cash Collateral solely as set forth in paragraph 11 herein.

23.    Events of Default.  The occurrence of an "Event of Default" under the Agreement shall constitute an event of default under this Interim Order (each, an "**Event of Default**").

24.    Rights and Remedies Upon Event of Default.

(a)    *DIP Facility Termination.*   Immediately upon the occurrence and during the continuance of an Event of Default, the Lender may in its discretion (or shall in accordance with the DIP Loan Documents) (i) declare the DIP Facility terminated (such declaration, a "**Termination Declaration**"), or (ii) send a reservation of rights notice to the Debtor, which notice may advise the Debtor that any further advances under the DIP Facility will be made in the sole discretion of the Lender.  Upon the issuance of a Termination Declaration: (I) all or any portion of the Commitments of the Lender to make loans or otherwise extend credit may be suspended or terminated in accordance with the DIP Loan Documents; (II) all DIP Obligations may be deemed immediately due and payable in accordance with the DIP Loan Documents; and (III) after expiration of the Remedies Notice Period, any right or ability of the Debtor to use any Cash Collateral may be terminated, reduced or restricted by the Lender, provided that, during the Remedies Notice Period, the Debtor may use Cash Collateral solely to meet payroll (other than severance) and to pay expenses critical to the preservation of the Debtor and its estate as agreed by the Lender, in its sole discretion, in each case in accordance with the terms and provisions of the Budget.  With respect to the DIP Collateral, following the Termination Declaration, subject to the Remedies Notice Period, the Lender and the Prepetition Senior Creditor may exercise all rights and remedies available to them under the DIP Loan Documents or the Prepetition Senior Debenture Documents, as applicable, or

4815-5035-6654.1

applicable law against the DIP Collateral and without limiting the foregoing, the Lender and

the Prepetition Senior Creditor may, subject to the Remedies Notice Period, (i) enter onto the

premises of the Debtor in connection with an orderly liquidation of the DIP Collateral; and/or

(ii) exercise any rights and remedies provided under the DIP Loan Documents or the

Prepetition Senior Debenture Documents, as applicable, or at law or equity, including all

remedies provided under the Bankruptcy Code and pursuant to this Interim Order and the

Final Order.    Following the termination of the Remedies Notice Period, the Lender may require

the Debtor to seek authority from the Court to retain an Approved Liquidator for the purpose

of conducting a liquidation or "going out of business" sale and/or the orderly liquidation of

the DIP Collateral and, if the Debtor refuses to seek such authority, the Lender shall be entitled

to seek such authority directly.

(b)      *Notice of Termination*.  Any Termination Declaration shall be given by

facsimile (or other electronic means, including electronic mail) to counsel to the Debtor,

counsel to the Prepetition Senior Creditor, counsel to any Statutory Committee, and the U.S.

Trustee (the earliest date any such Termination Declaration is made shall be referred to herein as

the "**Termination Declaration Date**"). The DIP Obligations shall be due and payable, without

notice or demand, and the use of Cash Collateral shall automatically cease on the Termination

Declaration Date, except as provided in paragraphs 1 1 and 2 4 of this Interim Order.

Any automatic stay otherwise applicable to the Lender and the Prepetition Senior Creditors is

hereby modified so that seven (7) business days after the Termination Declaration Date (the

"**Remedies Notice Period**"), the Lender and the Prepetition Senior Creditor shall be entitled to

exercise all rights and remedies against the DIP Collateral in accordance with the DIP

Loan Documents or the Prepetition Senior Debenture Documents, as applicable, and this

4815-5035-6654.1

Interim Order, and shall be permitted to satisfy the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens and Adequate Protection Superpriority Claims, subject only to the DIP Carve Out and Prepetition Permitted Liens. During the Remedies Notice Period, the Debtor shall be entitled to seek an emergency hearing with the Court for the sole purpose of contesting whether an Event of Default has occurred; <u>provided</u>, that in the event the Debtor seeks such an emergency hearing and the Court is unable to schedule such a hearing during the seven (7) business day period described above, the Remedies Notice Period shall be tolled until the date on which the Court enters an order with respect to whether an Event of Default has occurred. Unless the Court determines during the Remedies Notice Period that an Event of Default has not occurred, the automatic stay shall automatically be terminated at the end of the Remedies Notice Period without further notice or order and the Lender and the Prepetition Senior Creditor shall be permitted to exercise all remedies set forth herein, in the Agreement, the DIP Loan Documents, the Prepetition Senior Debenture Documents, and as otherwise available at law against the DIP Collateral, without further order of or application or motion to the Court, and without restriction or restraint by any stay under Sections 105 or 362 of the Bankruptcy Code, or otherwise, against the enforcement of the liens and security interest in the DIP Collateral or any other rights and remedies granted to (x) the Lender with respect thereto pursuant to the Agreement, the other DIP Loan Documents or this Interim Order and (y) the Prepetition Senior Creditor with respect thereto pursuant to the Prepetition Senior Debentures, the other Prepetition Senior Debenture Documents or this Interim Order.

(c)     *Access to Leased Premises*.  The Lender's exercise of its remedies pursuant to this paragraph 24 shall be subject to: (w) any agreement in writing between the Lender and any applicable landlord, (x) pre-existing rights of the Lender and any applicable

4815-5035-6654.1

landlord under applicable non-bankruptcy law, (y) consent of the applicable landlord, or (z) further order of the Court following notice and a hearing.

25.     <u>Good Faith Under Section 364 of the Bankruptcy Code; No Modification or Stay of this Interim Order</u>.   The Lender has acted in good faith in connection with this Interim Order and its reliance on this Interim Order is in good faith.   Based on the findings set forth in this Interim Order and the record made during the Interim Hearing, and in accordance with Section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Interim Order are hereafter modified, amended or vacated by a subsequent order of this Court, or any other court, the Lender is entitled to the protections provided in Section 364(e) of the Bankruptcy Code. Any such modification, amendment or vacatur shall not affect the validity and enforceability of any advances previously made or made hereunder, or lien, claim, or priority authorized or created hereby, provided that the Interim Order was not stayed by court order after due notice had been given to the Lender at the time the advances were made or the liens, claims or priorities were authorized and/or created.   Any liens or claims granted to the Lender hereunder arising prior to the effective date of any such modification, amendment or vacatur of this Interim Order shall be governed in all respects by the original provisions of this Interim Order, including entitlement to all rights, remedies, privileges and benefits granted herein, provided that the Interim Order was not stayed by court order after due notice had been given to the Lender at the time the advances were made or the liens, claims or priorities were authorized and/or created.

26.     <u>DIP and Other Expenses.</u>  Upon entry of the Final Order, except as specifically and expressly allowed in this Order, the Debtor is authorized and directed to pay the DIP Fees and all reasonable and documented out-of-pocket expenses of the Lender in connection with

4815-5035-6654.1

the DIP Facility (including, without limitation, expenses incurred prior to the Petition Date), as provided in the DIP Loan Documents. Payment of all such fees and expenses shall not be subject to allowance by the Court and professionals for the Lender shall not be required to comply with the U.S. Trustee fee guidelines. The professionals for the Lender and the Prepetition Senior Creditor shall deliver a copy of their respective invoices to counsel for any Statutory Committee and the U.S. Trustee, redacted as necessary with respect to any privileged or confidential information contained therein. Any objections raised by the Debtor, the U.S. Trustee, or any Statutory Committee with respect to such invoices within ten (10) days of the receipt thereof will be resolved by the Court. In the event of any objection, the provisions of Section 107 of the Bankruptcy Code and Rule 9018 of the Federal Rules of Bankruptcy Procedure shall apply. Pending such resolution, the undisputed portion of any such invoice will be paid promptly by the Debtor. Notwithstanding the foregoing, the Debtor is authorized and directed to pay (including by means of an advance or charge against its loan account by the Prepetition Senior Creditor or the Lender, as applicable) on the closing date all reasonable fees, costs and expenses of the Lender and the Prepetition Senior Creditor incurred on or prior to such date without the need for any professional engaged by the Lender or the Prepetition Senior Creditor to first deliver a copy of its invoice as provided for herein.

27. <u>Indemnification.</u> Effective upon entry of the Final Order, the Debtor shall indemnify and hold harmless the Lender, and its respective shareholders, members, directors, agents, officers, subsidiaries and affiliates, successors and assigns, attorneys and professional advisors, in their respective capacities as such, from and against any and all damages, losses, settlement payments, obligations, liabilities, claims, actions or causes of action, whether groundless or otherwise, and reasonable costs and expenses incurred, suffered, sustained or

4815-5035-6654.1

required to be paid by an indemnified party of every nature and character arising out of or related to the DIP Loan Documents, or the DIP Facility or the transactions contemplated thereby and by this Interim Order, whether such indemnified party is party thereto, as provided in and pursuant to the terms of the DIP Loan Documents and as further described therein and herein, or in connection with this case, any plan, or any action or inaction by the Debtor; provided, that such indemnity shall not, as to any indemnified party, be available to the extent that such losses, claims, damages, liabilities or related expenses are determined by a court of competent jurisdiction by final and non-appealable judgment to have resulted from the gross negligence or willful misconduct of such indemnified party. The indemnity includes indemnification for the Lender's exercise of discretionary rights granted under the DIP Facility. In all such litigation, or the preparation therefor, the Lender shall be entitled to select its own counsel and, in addition to the foregoing indemnity, the Debtor agrees to promptly pay the reasonable fees and expenses of such counsel.

28.    Proofs of Claim. Upon entry of the Final order, any order entered by the Court in relation to the establishment of a bar date for any claims (including without limitation administrative claims) in the Case or any Successor Case shall not apply to the Lender or the Prepetition Senior Creditor. Neither the Lender nor the Prepetition Senior Creditor will be required to file proofs of claim or any Successor Case, and the provisions of this Interim Order relating to the amount of the DIP Obligations, the DIP Superpriority Claim and the Prepetition Senior Obligations shall constitute timely filed proofs of claim and/or administrative expense requests. Provided; however, for the avoidance of doubt, both the Lender and the Prepetition Secured Lender shall file any request for payment of administrative expense priority claims with this Court and provide notice and an opportunity for a hearing.

4815-5035-6654.1

29.    <u>Rights of Access and Information.</u> Without limiting the rights of access and information afforded the Lender under the DIP Loan Documents, the Debtor shall be, and hereby is, required to afford representatives, agents and/or employees of the Lender reasonable access to the Debtor's premises and its books and records in accordance with the DIP Loan Documents, and shall reasonably cooperate, consult with, and provide to such persons all such information as may be reasonably requested. In addition, the Debtor shall authorize their independent certified public accountants, financial advisors, investment bankers and consultants to cooperate, consult with, and provide to the Lender all such information as may be reasonably requested with respect to the business, results of operations and financial condition of the Debtor.

30.    <u>DIP Carve Out</u>.

(a)    *DIP Carve Out.* As used in this Order, the "**DIP Carve Out**" means, collectively, the sum of: (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee pursuant to 28 U.S.C. §1930(a) and Section 3717 of title 31 of the United States Code; (ii) the aggregate amount of all fees and expenses of the claims/noticing agent incurred or accrued; (iii) the aggregate amount of accrued or incurred and unpaid fees and expenses of the Debtor's professionals retained by final order of the Court (which order has not been reversed, vacated or stayed unless such stay is no longer effective) under Sections 327(a) or 1103(a) of the Bankruptcy Code (the "**Case Professionals**"), to the extent such fees and expenses are allowed and payable pursuant to an order of the Court (which order has not been reversed, vacated or stayed) ("**Allowed Professional Fees**") but subject to the aggregate amount(s) set forth in the Budget plus the amount of any unused retainer; and (iv) to the extent allowed by the Bankruptcy Court, accrued

4815-5035-6654.1

and unpaid fees and expenses incurred by professionals or professional firms retained by an official committee of unsecured creditors, if one is appointed, in an amount not to exceed $60,000. Notwithstanding anything to the contrary in this Interim Order, the DIP Loan Documents, or the Prepetition Senior Debenture Documents, the DIP Carve Out shall be senior to all claims and liens, including DIP Obligations, the DIP Lien(s), and the DIP Superpriority Claim, as well as any adequate-protection liens and claims described in this Interim Order.

(b) *No Direct Obligation to Pay Professional Fees or Committee Expenses*. Except for funding the amounts identified in the Budget and Professional Fee Escrow Account as provided herein, neither the Lender nor the Prepetition Senior Creditor shall be responsible for the funding, direct payment or reimbursement of any fees or disbursements of any Case Professionals or any Committee Expenses incurred in connection with the Case or any Successor Case. Nothing in this Interim Order or otherwise shall be construed to obligate the Lender or the Prepetition Senior Creditor in any way to pay compensation to or to reimburse expenses of any Case Professional (including any Committee Expenses), or to guarantee that the Debtor has sufficient funds to pay such compensation or reimbursement. Nothing in this Interim Order or otherwise shall be construed to increase the DIP Carve Out if actual (i) Allowed Professional Fees of any Case Professional or (ii) Committee Expenses are higher in fact than the estimated fees and disbursements reflected in the Budget. Except for funding the amounts identified in the Budget, notwithstanding anything to the contrary in this Interim Order, the Budget, the DIP Loan Documents, or the Prepetition Senior Debenture Documents, neither the Lender nor the Prepetition Senior Creditor shall be responsible for funding into the Professional Fee Escrow Account any fees and expenses of the Debtor's attorneys or any "success" or similar fee payable to the Debtor's investment banker, and,

subject to the immediately succeeding sentence, in no event shall any such amounts be paid out of the DIP Carve-Out or any funds in the Professional Fee Escrow Account (it being agreed that, in the case of the Debtor's attorneys, such amounts shall be paid solely out of the pre-petition retainers provided to such attorneys).

(c)    *Payment of DIP Carve Out*. The funding of the DIP Carve Out shall be added to and made a part of the DIP Obligations, paid into the Professional Fee Escrow Account, and secured by the DIP Collateral and otherwise entitled to the protections granted under this Interim Order, the DIP Loan Documents, the Bankruptcy Code and applicable law. The Debtor shall establish segregated accounts for the purpose of periodically depositing funds on account of (a) U.S. Trustee Fees and court-administration fees that will accrue during the pendency of the Case and (b) the amounts identified in the Budget for the beneficiaries of the DIP Carve Out identified in the Budget, pending approval by the Court to disburse such funds to such beneficiaries, on the payment dates identified in the Budget.

31.    <u>Limitations on the DIP Facility, the DIP Collateral, the Cash Collateral and the Case Professionals DIP Carve Out</u>. The DIP Facility, the DIP Collateral, the Cash Collateral and the DIP Carve Out may not be used: (a) in connection with or to finance in any way any action, suit, arbitration, proceeding, application, motion or other litigation of any type (i) adverse to or against the interests of the Lender or the Prepetition Senior Creditor or their rights and remedies under the DIP Loan Documents, the Prepetition Senior Debenture Documents or this Interim Order or the Final Order, including, without limitation, for the payment of any services rendered by the professionals retained by the Debtor or any Statutory Committee in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense or other contested matter, the purpose of which is to seek, or the result

4815-5035-6654.1

of which would be to obtain, any order, judgment determination, declaration or similar relief, (ii) invalidating, setting aside, avoiding or subordinating, in whole or in part, any DIP Obligations or Prepetition Senior Obligations, (iii) for monetary, injunctive or other affirmative relief against the Lender or the Prepetition Senior Creditor or their collateral, (iv) preventing, hindering or otherwise delaying the exercise by the Lender or the Prepetition Senior Creditor of any rights and remedies under this Interim Order or the Final Order, the DIP Loan Documents, the Prepetition Senior Debenture Documents or applicable law, or the enforcement or realization (whether by foreclosure, credit bid, further order of the Court or otherwise) by the Lender upon any of the DIP Collateral or by the Prepetition Senior Creditor with respect to its Adequate Protection Liens, (v) asserting that the value of the Prepetition Collateral is less than the Prepetition Senior Obligations, or (vi) to pursue litigation against the Prepetition Senior Creditor; (b) to make any payment in settlement of any claim, action or proceeding, before any court, arbitrator or other governmental body; (c) to pay any fees or similar amounts to any person who has proposed or may propose to purchase interests in the Debtor; (d) objecting to, contesting, or interfering with, in any way, the Lender's enforcement or realization upon any of the DIP Collateral once an Event of Default has occurred, except as provided for in this Interim Order or Final Order, or seeking to prevent the Lender from credit bidding in connection with any proposed plan or reorganization or liquidation or any proposed transaction pursuant to section 363 of the Bankruptcy Code; (e) using or seeking to use Cash Collateral while the DIP Obligations or the Prepetition Senior Obligations remain outstanding in a manner inconsistent with the Budget, this Interim Order, or the payment of such outstanding amounts; (g) using or seeking to use any insurance proceeds constituting DIP Collateral without the consent of the Lender; (h) incurring Indebtedness (as defined in the

Agreement) outside the ordinary course of business, except as permitted under the DIP Loan Documents; (i) objecting to or challenging in any way the claims, liens, or interests held by or on behalf of the Lender or the Prepetition Senior Creditor; (j) asserting, commencing or prosecuting any claims or causes of action whatsoever, including, without limitation, any actions under Chapter 5 of the Bankruptcy Code, against the Lender or the Prepetition Senior Creditor; or (k) prosecuting an objection to, contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the DIP Obligations, the Prepetition Senior Obligations, the DIP Liens or the Prepetition Senior Liens or any other rights or interests of the Lender or the Prepetition Senior Creditor; provided, however, nothing in this Interim Order precludes the use of $15,000.00 to investigate any liens, positions, or financing parties in this case.

32.    <u>Payment of Compensation.</u>  Nothing herein shall be construed as a consent to the allowance of any professional fees or expenses of any Case Professionals or shall affect the right of the Lender to object to the allowance and payment of such fees and expenses.

33.    <u>Reservation of Certain Third-Party Rights and Bar of Challenges and Claims.</u>

(a)    The stipulations, findings, representations, and releases contained in this Interim Order and the DIP Loan Documents with respect to the Prepetition Senior Creditor and the Prepetition Senior Obligations shall be binding upon all parties-in-interest, any trustee appointed in this case and any Statutory Committee (each, a "**<u>Challenge Party</u>**"), unless and solely to the extent that (i) any Challenge Party, other than the Debtor, initiates an action or adversary proceeding relating to a Challenge (as defined below) during the Challenge Period (defined below), and (ii) the Court rules in favor of the plaintiff in any such timely and properly filed Challenge.  For purposes of this paragraph 33: (a) "**<u>Challenge</u>**" means any

claim or cause of action against the Prepetition Senior Creditor on behalf of the Debtor's creditors and interest holders, or to object to or to challenge the stipulations, findings or Debtor's Stipulations set forth herein, including, but not limited to those in relation to: (i) the validity, extent, priority, or perfection of the mortgage, security interests, and liens of the Prepetition Senior Creditor; (ii) the validity, allowability, priority, or amount of the Prepetition Senior Obligations (including any fees included therein); (iii) the secured status of the Prepetition Senior Obligations; (iv) any liability of the Prepetition Senior Creditor with respect to anything arising from any of the respective Prepetition Senior Debenture Documents; or (v) the releases set forth in the DIP Loan Documents; and (b) "**Challenge Period**" means (i) with respect to any party-in-interest other than the Statutory Committee, the period from the Petition Date until the date that is seventy five (75) calendar days after the entry of this Interim Order and (ii) with respect to the Statutory Committee, the period through and including February 10, 2020. Notwithstanding the foregoing, the Challenge Period may be extended by agreement of the Lender and the Prepetition Senior Creditor.

(b)      Upon the expiration of the Challenge Period without the filing of a Challenge (the "**Challenge Period Termination Date**"): (A) any and all such Challenges and objections by any party (including, without limitation, any Statutory Committee, any Chapter 11 trustee, and/or any examiner or other estate representative appointed in this Case, and any Chapter 7 trustee and/or examiner or other estate representative appointed in any Successor Case), shall be deemed to be forever waived, released and barred, (B) all matters not subject to the Challenge, and all findings, Debtor's Stipulations, waivers, releases, affirmations, and other stipulations as to the priority, extent, and validity as to the Prepetition Senior Creditor's claims, liens, and interests shall be of full force and effect and forever binding upon the

4815-5035-6654.1

Debtor, the Debtor's bankruptcy estate and all creditors, interest holders, and other parties in interest in this Case and any Successor Case; and (C) any and all claims or causes of action against the Debtor or the Prepetition Senior Creditor relating in any way to the Debtor or the Prepetition Senior Debenture Documents shall be forever waived and released by the Debtor's estate, all creditors, interest holders and other parties in interest in this case and any Successor Cases.

34.     <u>Reservation of Rights.</u>  Notwithstanding anything to the contrary in this Interim Order, Agreement, the DIP Loan Documents, or the Prepetition Senior Debenture Documents, if there is a timely and successful Challenge by any party in interest (in accordance with paragraph 33 hereof), this Court may unwind the repayment of the Prepetition Senior Obligations and order the repayment of such amount to the extent that such payment resulted in the payment of any Prepetition Senior Obligations consisting of an unsecured claim or other amount not allowable under Section 502 of the Bankruptcy Code. Notwithstanding the foregoing, a successful Challenge shall not in any way affect the validity, enforceability or priority of the DIP Obligations or the DIP Liens.

35.     <u>No Third- Party Rights.</u>  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

36.     <u>Section 506(c) Claims.</u>  Upon entry of the Final Order, no costs or expenses of administration which have been or may be incurred in the Case at any time shall be charged against the Lender or the DIP Collateral or the Prepetition Senior Creditor or the Prepetition Senior Liens pursuant to Sections 105 or 506(c) of the Bankruptcy Code, or otherwise.

37.  <u>No Marshaling/Applications of Proceeds</u>.  Upon entry of the Final Order, neither the Lender nor the Prepetition Senior Creditor shall be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral.

38.  <u>Section 552(b)</u>.  Upon entry of the Final Order, the Lender shall be entitled to all of the rights and benefits of Section 552(b) of the Bankruptcy Code.  Subject to the entry of the Final Order, the "equities of the case" exception under Section 552(b) of the Bankruptcy Code shall not apply to the Lender or the Prepetition Senior Creditor with respect to  proceeds, products, offspring or profits of any of the Prepetition Collateral.

39.  <u>No Waiver and Releases by Debtor</u>. Notwithstanding anything to the contrary in this Interim Order, the DIP Loan Documents, or the Prepetition Senior Debenture Documents, neither the Debtor nor the Debtor's estate waives or releases the Lender or Prepetition Senior Creditor whatsoever.  However, the Debtor covenants and agrees not to sue the Lender or Prepetition Senior Creditor for any prepetition conduct.

40.  <u>Discharge Waiver</u>.  Effective upon entry of the Final Order, the Debtor expressly stipulates, and the Court finds and adjudicates that, none of the DIP Obligations, the DIP Superpriority Claim or the DIP Liens shall be discharged by the entry of an order confirming any plan of reorganization, notwithstanding the provisions of Section 1141(d) of the Bankruptcy Code, unless the DIP Obligations have been paid in full in cash on or before the effective date of a confirmed plan of reorganization.  Subject to entry of a final order, the Debtor expressly stipulates, and the Court finds and adjudicates that, none of the Adequate Protection Liens or Adequate Protection Superpriority  Claims shall be discharged by the entry of an order confirming any plan of reorganization,  notwithstanding the provisions of Section 1141(d) of the Bankruptcy Code, unless the Adequate  Protection Superpriority Claims and claims secured

4815-5035-6654.1

by the Adequate Protection Liens have been  paid in full in cash on or before the effective date

of a confirmed plan of reorganization.  Subject to entry of the final order, the Debtor shall not

propose or support any plan or sale of all or substantially all of the Debtor's assets or entry

of any confirmation order or sale order that is not conditioned upon the payment in full in

cash, on the effective date of such plan of all DIP Obligations and Adequate Protection

Superpriority Claims.

41.    Rights Preserved.    Notwithstanding anything to the contrary in this Interim

Order, the DIP Loan Documents, or the Prepetition Senior Debenture Documents, the entry of

this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or

implicitly: (a) the Lender's or the Prepetition Senior Creditor's right to seek any other or

supplemental relief in respect of the Debtor (including the right to seek additional adequate

protection, including, without limitation, in the form of reimbursement of fees and expenses of

counsel to the Prepetition Senior Creditor); (b) the rights of the Prepetition Senior

Creditor to seek the payment by the Debtor of post-petition interest or fees pursuant to Section

506(b) of the Bankruptcy Code; or (c) any of the rights of the Lender or the Prepetition

Senior Creditor under the Bankruptcy Code or under non-bankruptcy law, including, without

limitation, the right to (i) request modification of the automatic stay of Section 362 of the

Bankruptcy Code, (ii) request dismissal of the Case or any Successor Case, conversion of the

Case to a case under Chapter 7, or appointment of a Chapter 11 trustee or examiner with

expanded powers, or (iii) propose, subject to the provisions of Section 1121 of the Bankruptcy

Code, a Chapter 11 plan or plans.  Other than as expressly set forth in this Interim Order, any

other rights, claims or privileges (whether legal, equitable or otherwise) of the Lender and the

Prepetition Senior Creditor are preserved.

4815-5035-6654.1

42. <u>No Waiver by Failure to Seek Relief</u>.  The failure of the Lender to seek relief or otherwise exercise rights and remedies under this Interim Order, the DIP Loan Documents or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the Lender.

43. <u>Binding Effect of Interim Order</u>.  Immediately upon entry by this Court (notwithstanding any applicable law or rule to the contrary), the terms and provisions of this Interim Order shall become valid and binding upon and inure to the benefit of the Debtor, the Lender, the Prepetition Senior Creditor, all other creditors of the Debtor, any Statutory Committee or any other court appointed committee, appointed in the Case, and all other parties in interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in the Case, any Successor Case, or upon dismissal of any Case or Successor Case.  Notwithstanding anything contained herein with respect to the obligations or limitations when a Final Order is entered, the terms of the Final Order shall be what is binding on all parties.  Except as otherwise set forth herein, this Interim Order shall continue in full force and effect until the final hearing on Thursday, December 5, 2019 at 1:30 p.m. (CT) and all parties reserve all objections, defenses and related rights.

44. <u>No Modification of Interim Order</u>.  Until and unless the DIP Obligations have been paid in full in cash (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their terms), and all commitments to extend credit under the DIP Facility have been terminated, the Debtor irrevocably waives the right to seek and shall not seek or consent to, directly or indirectly: (a) without the prior written consent of the Lender (i) any modification, stay, vacatur or amendment to this Interim Order; or (ii) a priority claim for any administrative expense or unsecured claim against the

4815-5035-6654.1

Debtor (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation any administrative expense of the kind specified in Sections 503(b), 507(a) or 507(b) of the Bankruptcy Code) in the Case or any Successor Case, equal or superior to the DIP Superpriority Claim, other than the DIP Carve Out; (b) any order allowing use of Cash Collateral resulting from DIP Collateral; and (c) any lien on any of the DIP Collateral with priority equal or superior to the DIP Liens.  The Debtor irrevocably waives any right to seek any amendment, modification or extension of this Interim Order without the prior written consent, as provided in the foregoing, of the Lender, and no such consent shall be implied by any other action, inaction or acquiescence of the Lender.

45.    <u>Interim Order Controls</u>.  In the event of any inconsistency between the terms and conditions of the Agreement, DIP Loan Documents or this Interim Order, the provisions of this Interim Order shall govern and control.

46.    <u>Survival</u>.  Subject to the entry of a Final Order, the provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (a) confirming any plan of reorganization in the Case; (b) converting the Case to a case under Chapter 7 of the Bankruptcy Code; (c) dismissing the Case or any Successor Case; or (d) pursuant to which this Court abstains from hearing the Case or any Successor Case. The terms and provisions of this Interim Order, including the claims, liens, security interests and other protections granted to the Lender and Prepetition Senior Creditor pursuant to this Interim Order and/or the DIP Loan Documents, notwithstanding the entry of any such order, shall continue in the Case, in any Successor Case, or following dismissal of the Case or any Successor Case, and shall maintain their priority as provided by this Interim Order until all DIP Obligations have been paid in full and all commitments to extend credit under the DIP Facility

4815-5035-6654.1

are terminated.   The terms and provisions in this Interim Order concerning the indemnification shall continue in the Case and in any Successor Case, following dismissal of the Case or any Successor Case, following termination of the DIP Loan Documents and/or the repayment of the DIP Obligations.

47.     <u>Conflicts</u>.   To the extent the DIP Loan Documents are inconsistent with this Interim Order, the terms of this Interim Order shall govern.

48.     <u>Events of Default</u>.   Notwithstanding anything to the contrary in this Interim Order, the DIP Loan Documents, including paragraph 12.11(a) of the Agreement, or the Prepetition Senior Debenture Documents, neither the Prepetition Senior Creditor nor the Lender has the right or entitlement to approve any proposed plan of reorganization, bidding procedures, sale order, or other order relating to the Debtor's bankruptcy case, and a filing without their approval or consent shall not constitute an event of default under the Agreement, this Interim Order, the DIP Loan Documents, or the Prepetition Senior Debenture Documents.

49.     <u>Final Hearing</u>.   The Final Hearing to consider entry of the Final Order and final approval of the DIP Facility is scheduled for December 5, 2019, at 1:30 p.m. before the Honorable Judge Rhoades, at the United States Bankruptcy Court for the Eastern District of Texas located at 660 North Central Expressway, Suite 300B, Plano, Texas 75074.   Except as otherwise set forth in this Interim Order, this Interim Order shall continue in full force and effect until the Final Hearing, and all parties reserve objections, defenses, and related rights until the Final Hearing, except the Agreements in the Record shall remain in full force and effect and apply to the Final Order.

50.     <u>Notice of Final Hearing</u>:   Within two business days of the Interim Order being entered, the Debtor shall serve, by United States mail, first-class postage prepaid, a

4815-5035-6654.1

copy of the Motion and this Interim Order upon: (a) the Office of the United States Trustee for the Eastern District of Texas; (b) the Securities and Exchange Commission; (c) the Internal Revenue Service; (d) Joseph Coleman, counsel to the Unsecured Creditors' Committee; (e) Shraiberg, Landau, & Page, P.A. (Attn: Bradley S. Shraiberg, Esq.), attorney for the Lender and the Prepetition Senior Creditor; (f) any party which has filed prior to such date a request for notices under Bankruptcy Rule 2002 with this Court; and (g) counsel for any Statutory Committee.

51.    Objection Deadline.  Objections, if any, to the relief sought in the Motion shall be in writing, shall set forth with particularity the grounds for such objections or other statement of position, shall be filed with the clerk of the Bankruptcy Court, and personally served on (a) Debtor's counsel, Marcus A. Helt and Jack G. Haake, 2021 McKinney Avenue, Suite 1600, Dallas, Texas, 75201, and Washington Harbour, 3000 K Street, N.W., Suite 600, Washington, D.C. 20007-5109, respectively; (b) the Office of the United States Trustee for the Eastern District of Texas; (c) counsel to any Statutory Committee; and (d) Shraiberg, Landau, & Page, P.A. (Attn: Bradley S. Shraiberg, Esq.), attorney for the Lender and the Prepetition Senior Creditor, so that such objections are filed with the Court and received by said parties on or before 5:00 p.m. (Central Time) on December 3, 2019, with respect to entry of the Final Order.

52.    Effect of this Interim Order.  This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect immediately, notwithstanding anything to the contrary proscribed by applicable law.  Except for the Agreements in the Record, and notwithstanding anything set forth in this Interim Order, Agreement, DIP Loan Documents and the Prepetition Senior Debenture Documents, the Committee expressly and specifically reserves and shall not be prejudiced to pursue any and all

of its objections to the Final Order and the Debtors and DIP Lender reserve all of their arguments and defenses to such objections.

53.    <u>Retention of Jurisdiction</u>.   The Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

54.    <u>Texas Comptroller of Public Accounts.</u>   Notwithstanding anything to the contrary in this Interim Order, the relief granted herein is without prejudice to any rights of the Texas Comptroller of  Public Accounts (the "**Comptroller**") to funds that do not constitute property of the estate but that may qualify as tax trust funds.    The Comptroller is not precluded from pursuing such funds, if any, by this Interim Order, nor is any party in interest precluded from contesting any  action of the Comptroller to recover alleged trust funds.

Signed on 12/4/2019

*Brenda T. Rhoades*          SR

HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE

Order submitted by:


Proposed Attorneys for the
Debtors  and Debtors in Possession

4815-5035-6654.1

*ZNGY - Zenergy Brands, Inc.*
*Rolling Weekly Cash Flow*

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Week Ending** | 10/25/2019 | 11/1/2019 | 11/8/2019 | 11/15/2019 | 11/22/2019 | 11/29/2019 | 12/6/2019 | 12/13/2019 | 12/20/2019 | 12/27/2019 | 1/3/2020 | 1/10/2020 | 1/17/2020 |
| **Beginning Cash** | 49,376 | (1,745,880) | (1,874,415) | (1,945,915) | (1,982,290) | (2,012,757) | (2,106,671) | (2,132,921) | (2,174,296) | (2,200,349) | (2,279,802) | (2,326,927) | (2,351,677) |
| TCA Cash Injections* | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Cash Inflows** | | | | | | | | | | | | | |
| Zenergy Labs Incoming Revenue | - | 23,750 | - | - | - | - | 23,750 | - | - | - | - | 23,750 | - |
| NAUP Brokerage Incoming Revenue | - | - | - | - | - | 4,600 | - | - | - | 5,400 | - | - | - |
| Sunnay and Ash - 28th | 1,178 | - | - | - | 1,178 | - | - | - | - | 1,178 | - | - | - |
| Jail - 25th | 3,336 | - | - | - | 3,336 | - | - | - | 3,336 | - | - | - | 3,336 |
| Annex - 25th | 2,386 | - | - | - | 2,386 | - | - | - | 2,386 | - | - | - | 2,386 |
| BitPlus 1 - 29th | 6,052 | - | - | - | - | 6,052 | - | - | - | 6,052 | - | - | - |
| Bit Plus 2 - 29th | 6,052 | - | - | - | - | 6,052 | - | - | - | 6,052 | - | - | - |
| Fiesta - 24th | 9,831 | - | - | - | 9,831 | - | - | - | 9,831 | - | - | - | 9,831 |
| Burger Works - 27th | 4,286 | - | - | - | 4,286 | - | - | - | - | 4,286 | - | - | - |
| GracePoint - 24th | 450 | - | - | - | 450 | - | - | - | - | 450 | - | - | - |
| Total Cash Inflows | 33,570 | 23,750 | - | - | 21,467 | 16,703 | 23,750 | - | 15,553 | 23,417 | - | 23,750 | 15,553 |
| **Operational Cash Outflows** | | | | | | | | | | | | | |
| DIP Lender's Fees | 95,000 | | | | | | | | | | | | |
| Foley & Lardner | 62,500 | - | 62,500 | - | - | - | - | - | - | - | - | - | - |
| TCA Closing Fees | 83,000 | | | | | | | | | | | | |
| Miscellaneous Closing Costs | 2,450 | | | | | | | | | | | | |
| Restructuring Advisor | | | | | | | | | | | | | |
| BK Filing Fees (Reimbursement to FL) | | 14,000 | | | | | | | | | | | |
| UST Fees | - | 7,500 | - | - | - | - | - | - | - | - | 10,000 | - | - |
| Bank Service Charges | 1,000 | - | - | 1,000 | - | - | - | 1,000 | - | - | - | 1,000 | - |
| Office Supplies | 1,000 | - | - | - | 1,000 | - | - | - | 1,000 | - | - | - | 1,000 |
| Payroll Expense | - | 34,625 | - | 34,625 | - | 34,625 | - | 34,625 | - | - | 34,625 | - | 34,625 |
| Insurance Expense Plexus | - | 5,000 | - | - | - | 5,000 | - | - | - | 5,000 | - | - | - |
| Malone Bailey | - | 15,000 | - | - | - | - | - | - | - | 15,000 | - | - | - |
| CLA Tax Compliance | 8,000 | - | - | - | 8,000 | - | - | - | 8,000 | - | - | - | 8,000 |
| SamCo Holdings | - | 8,000 | - | - | - | 8,000 | - | - | - | 8,000 | - | - | - |
| Loev Law Firm - SEC | - | 2,500 | - | - | - | 2,500 | - | - | - | 2,500 | - | - | - |
| M2 Compliance | 1,000 | 1,000 | - | - | - | 1,000 | - | - | - | 1,000 | - | - | - |
| Rent Expense | - | 3,800 | - | - | - | 3,800 | - | - | - | - | - | - | - |
| Software Escrow | - | 60 | - | - | - | 60 | - | - | - | - | - | - | - |
| Amazon Web Service Expense | - | 300 | - | - | - | 300 | - | - | - | - | - | - | - |
| Microsoft 365 & Adobe Expense | - | 400 | - | - | - | 400 | - | - | - | - | - | - | - |
| Google Email Expense | 560 | - | - | - | - | - | - | - | - | - | - | - | - |
| GoDaddy Hosting Expense | 100 | 200 | - | - | - | 200 | - | - | - | - | - | - | - |
| VPS Server Expense | 326 | - | - | - | - | 326 | - | - | - | - | - | - | - |
| Smart Thermostat Licenes | 750 | 750 | - | 750 | - | 750 | - | 750 | - | - | - | - | - |
| Telephone CRM Expense | - | 150 | - | - | - | 150 | - | - | - | - | - | - | - |
| Securities Transfer Agent | 2,000 | 1,000 | - | - | - | 1,000 | - | - | - | 1,500 | - | - | - |
| Stretto | - | 10,000 | - | - | - | 15,000 | - | - | - | - | - | - | - |
| Travel (TCA Field Audit) | 2,500 | - | 2,500 | - | - | - | 2,500 | - | - | - | 2,500 | - | - |
| CORE | - | 500 | - | - | - | 500 | - | - | - | - | - | - | - |
| NAUP Outgoing Commissions | - | - | - | - | - | 2,100 | - | - | - | - | - | - | - |
| Travel, Meals and Entertainment | 1,500 | - | 1,500 | - | - | 1,500 | - | - | - | 1,500 | - | - | 1,500 |
| Total Operational Cash Outflows | 261,686 | 104,785 | 66,500 | 36,375 | 9,000 | 77,211 | 2,500 | 36,375 | 10,500 | | 47,125 | 1,000 | 45,125 |
| MESA Expenses (A,E&i)** | 1,500,000 | - | 5,000 | - | - | - | - | 5,000 | - | - | - | - | 5,000 |
| **Ending Cash Flow Position** | (1,745,880) | (1,874,415) | (1,945,915) | (1,982,290) | (2,012,757) | (2,106,671) | (2,132,921) | (2,174,296) | (2,200,349) | (2,279,802) | (2,326,927) | (2,351,677) | (2,417,355) |

Case 19-42886 Doc 119-1 Filed 12/04/19 Entered 12/04/19 09:02:29 Desc Ma...