IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ZENERGY BRANDS, INC., *et al.*,[1] | § | Case No. 19-42886 |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |

### OFFICIAL COMMITTEE OF UNSECURED CREDITORS' OBJECTION TO DEBTORS' FOURTH MOTION TO EXTEND THEIR EXCLUSIVE PERIODS TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF

The Official Committee of Unsecured Creditors (the "**Committee**") hereby objects (this "**Objection**") to the *Debtors' Fourth Motion to Extend Their Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof* [Dkt. #281] (the "**Exclusivity Motion**" or "**Motion**"),[2] which seeks another extension of the period within which the Debtors have the exclusive right to (i) file a chapter 11 plan and (ii) solicit votes thereon (collectively, the "**Exclusivity Periods**"). In support of this Objection, the Committee respectfully states as follows:

### JURISDICTION & VENUE

1. The United States Bankruptcy Court for the Eastern District of Texas, Sherman Division (the "**Court**"), has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] The Debtors in the above-captioned chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Zenergy Brands, Inc. (1686); NAUP Brokerage, LLC (7899); Zenergy Labs, LLC (8045); Zenergy Power & Gas, Inc. (1963); Enertrade Electric, LLC (8649); Zenergy & Associates, Inc. (4022); and Zen Technologies, Inc. (7309). The Debtors' mailing address is 5700 Granite Pkwy, #200, Plano, TX 75024.

[2] Capitalized terms shall have the meanings ascribed to them in the Debtors' Exclusivity Motion unless otherwise noted or defined herein.

2.     On October 24, 2019 (the **"Petition Date"**), Zenergy Brands, Inc. and its affiliated debtors (collectively, the **"Debtors"**) commenced the above-captioned cases by filing voluntary petitions in this Court under chapter 11 of title 11 of the United States Code (the **"Bankruptcy Code"**).  The Debtors are operating as debtors in possession under Bankruptcy Code §§ 1107 and 1108.  The United States Trustee appointed the Committee on November 4, 2019 [Dkt. #69].

## SUMMARY OF OBJECTION

3.     The pending Exclusivity Motion is the Debtors' fourth request to extend the Exclusivity Periods.  The Debtors claim that further extensions are necessary for them to continue negotiations with a newly-found lender to fund their plan.  However, the Debtors have already been afforded three extensions of the Exclusivity Periods and over 11 months of exclusivity, and a viable path forward has yet to be solidified.

4.     The Committee acknowledges that the Debtors have dealt with circumstances beyond their control.  But notwithstanding, the fact is that further extensions of the Exclusivity Periods are not justified in this case.  The time has come for creditors to have a voice in how this case proceeds forward, and allowing creditors that opportunity will not affect the Debtors' ability to continue their funding negotiations and propose a viable plan if those negotiations are successful.  The Committee does not believe that further extensions of the Exclusivity Periods are warranted in this case; nor does the Committee believe that such extensions will be beneficial to the Debtors' estates.

## FACTS IN SUPPORT OF OBJECTION

5.     The Debtors filed their Plan of Reorganization [Dkt. #193] (the **"Plan"**) in this case on March 16, 2020.  The Plan was to be funded by TCA Global Credit Master Fund, L.P. and TCA Special Situations Credit Strategies ICAV (collectively, **"TCA"**).  While the Plan received support from creditors, the appointment of a receiver over TCA left the Plan without a source of funding.

6. Per the Motion, the Debtors have recently identified and begun negotiations with a new lender to fund the Plan. EXCLUSIVITY MOTION, ¶ 4. By way of the Motion, the Debtors request a fourth extension of the Exclusivity Periods "for cause" to preclude creditors from filing competing plans while negotiations continue with the proposed new lender.

7. However, the Debtors have not demonstrated sufficient cause for yet another extension of the Exclusivity Periods. The only "cause' cited by the Debtors (but not proven) is an alleged increase in costs associated with a competing plan; but even assuming that were true, it does not justify the relief sought. First, the ability of creditors to file a plan will not affect the Debtors' funding negotiations with the new lender whatsoever. Moreover, ending the Exclusivity Periods will arguably incentivize the Debtors and new lender to reach an expedient agreement on plan funding, thus bringing obvious benefits to the estates. Lastly, a competing plan does not affect the Debtors' evidentiary burden of proof at confirmation, meaning that a competing plan should not materially alter the Debtors' costs associated with confirmation.

8. The Committee acknowledges that the Debtors have been affected by circumstances beyond their control. Unfortunately, however, *why* the Debtors have not moved forward with a plan is not relevant. The relevant fact is simply *that* the Debtors, after nearly a year, have not been able to do so. To the extent that creditors or other parties in interest are able to put forth a confirmable plan, this case has reached the point where those proposals should be considered. The best interests of the estates in this case necessitates consideration of all viable options, regardless of whether those options are proposed by the Debtors or by creditors.

## ARGUMENTS & AUTHORITIES

9. The Debtors bear the burden of establishing "cause" to extend the Exclusivity Periods. *In re Nicolet, Inc.*, 80 B.R. 733, 741 (Bankr. E.D. Pa. 1987). To establish cause, the Debtors must go beyond "recitations of allegations" and must submit evidence establishing that cause in fact exists for

the requested extension. *Id.* at 742 (stating that "'mere recitations of allegations deemed by a debtor to constitute cause for an extension of the exclusivity period is insufficient to allow such an extension'" and that "submission of evidence to support the allegations of cause is a prerequisite.") (*quoting In re Ravenna Industries, Inc.*, 20 B.R. 886, 889 (Bankr.N.D.Ohio 1982)). "In cases involving uncomplicated issues and not unusually large debtors, requests for extensions of the exclusivity periods should not be granted routinely or as a matter of course without proof as to probable success in formulating a plan of reorganization and evidence that the debtor did not seek the additional extension in order to pressure the creditors to accede to the debtor's reorganization demands." *In re Texaco Inc.*, 76 B.R. 322, 326 (Bankr. S.D.N.Y. 1987) (citations omitted).

10.   In this case, the Debtors' Exclusivity Motion cannot be granted for the fundamental reason that no evidence has been presented to establish cause. *Id.* The Debtors merely assert facts that they claim support an extension of Exclusivity Periods, but they have presented no proof that negotiations with the proposed new lender are likely to be successful—or even indicated the status of negotiations—and, consequently, have failed to show probable success in formulating a plan. *Id.* The Debtors have likewise presented no evidence that this fourth requested extension is not sought in order to pressure creditors. *Id.* In the absence of such evidence, the Debtors have not met their required burden of proof for granting the Motion.

11.   Additionally, the facts of this case do not support the requested Exclusivity Period extensions. As noted in the Debtors' Motion, courts generally consider nine factors when determining whether cause exists to extend Exclusivity Periods.[3] *See* EXCLUSIVITY MOTION, ¶ 19. None of these factors are dispositive, and not all are relevant in every case. *Hoffinger Indus., Inc.*, 292 B.R. at 643-44.

---

[3] Those factors are: (i) the size and complexity of the case; (ii) the necessity of sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information; (iii) the existence of good faith progress toward reorganization; (iv) the fact that the debtor is paying its bills as they become due; (v) whether the debtor has demonstrated reasonable prospects for filing a viable plan; (vi) whether the debtor has made progress in negotiations with its creditors; (vii) the amount of time which has elapsed in the case; (viii) whether the debtor is seeking an extension of exclusivity in

12. Here, the Debtors are not unusually large, nor do they have a complex financial structure. Rather, the Debtors' difficulties in proposing a confirmable plan stem from the simple fact that they have been unable to obtain funding for the plan—*i.e.*, a breakdown in plan negotiations. The Debtors have already been afforded three extensions of the Exclusivity Periods, and there is no reason to believe that a fourth will yield any benefit to the estates. To the contrary, allowing creditors the opportunity to propose a plan for the Debtors can only stand to benefit the estates. Bankruptcy Code § 1121 specifically contemplates that creditors should be afforded such opportunity after a reasonable period of exclusivity for the Debtors. *See* 11 U.S.C. § 1121.

13. The Debtors have enjoyed ample exclusivity in this case, and the time has come to consider alternative plan proposals in the event that a creditor wishes to propose one.[4] Expiration of the Exclusivity Periods will not affect the Debtors' ability continue negotiations with the proposed new lender and propose a plan. And because a competing plan does not change the Debtors' evidentiary burden in seeking confirmation, any such competing plan should not materially affect the Debtors' cost of confirming a plan.

WHEREFORE, the Committee respectfully requests that the Debtors' Exclusivity Motion be denied and that the Committee be granted such other and further to which it is justly entitled.

---

order to pressure creditors to submit to the debtor's reorganization demands; and (ix) whether an unresolved contingency exists. *In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006); *see also In re Hoffinger Indus., Inc.*, 292 B.R. 639 (B.A.P. 8th Cir. 2003).

[4] To further illustrate, consider what must happen for a creditor to propose a competing plan in the first place. The creditor must either fund the plan themselves or find a third party to fund the plan—something the debtors have been working towards since this case began. If a creditor is able to accomplish that in a period of weeks before the Debtors are able to finalize negotiations with the new lender, that creditor deserves to have a voice in the plan process.

DATED: October 5, 2020

Respectfully submitted,

**KANE RUSSELL COLEMAN LOGAN PC**

By: */s/ S. Kyle Woodard*
  **Joseph M. Coleman**
  State Bar No. 04566100
  **John J. Kane**
  State Bar No. 24066794
  **S. Kyle Woodard**
  State Bar No 24102661

Bank of America Plaza
901 Main Street, Suite 5200
Dallas, Texas 75202
Telephone: (214) 777-4200
Telecopier: (214) 777-4299
E-mail: jcoleman@krcl.com
E-mail: jkane@krcl.com
E-mail: kwoodard@krcl.com

**COUNSEL FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 5, 2020, a true and correct copy of the foregoing objection was filed with the Court and served via the Court's electronic case filing system (ECF) upon all parties receiving such service in this bankruptcy case.

        */s/ S. Kyle Woodard*
        S. Kyle Woodard